Charmaine Elizabeth ROARK,
Appellant,

v.

STATE of Alaska, Appellee.

No. A–1755.

Court of Appeals of Alaska.

Aug. 5, 1988.

Motion to Publish Granted Aug. 5, 1988.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Charmaine Elizabeth Roark was charged with murder in the first degree. A jury acquitted Roark of the murder charge but found her guilty of the lesser-included offense of manslaughter. Superior Court Judge Karl S. Johnstone sentenced Roark, a first offender, to the presumptive term of five years' imprisonment. Roark appeals her sentence, contending that the sentencing court erred in rejecting one of her proposed mitigating factors. We affirm.

Roark's conviction stemmed from the shooting death of Howard Taylor, a man with whom Roark lived in a *de facto* marital relationship. Taylor was apparently a frequent abuser of cocaine. On July 17, 1984, he obtained and injected some cocaine. Around 2:00 a.m. on July 18, he locked himself in the bathroom of the fami-

ly residence with additional cocaine and refused to come out. When Roark got up the next morning, Taylor was still in the bathroom. Taylor's employer called between 9:00 and 10:00 a.m. to offer him his old job back; Taylor came out to take the call. The employer told him to take a flight to the North Slope later that day. Despite the call, Taylor returned to the bathroom and again locked the door. He refused to leave even when his children said they needed to use the bathroom.

Later that morning, Roark approached the bathroom door with a large kitchen knife. At trial, Roark claimed that she had the knife in order to pry open the bathroom door. The state disputed this claim. In any event, Taylor opened the bathroom door and a struggle over the knife ensued. Taylor sustained a defensive knife wound to his hand in the course of the struggle. Roark was also cut. Taylor ultimately managed to lock himself back in the bathroom.

Roark then instructed her children to go to a neighbor's house. She armed herself with a handgun that belonged to Taylor and again approached the bathroom door. At trial, Roark claimed that she had gotten the gun to take it to a pawn shop in order to obtain money for family necessities. She testified that she did not know how to operate it or whether it was loaded. According to Roark, as she stood outside the bathroom to tell Taylor what she intended to do, Taylor opened the door and grabbed for the gun. Roark claimed that she struggled with Taylor over the gun and that during the struggle the gun accidently discharged. Taylor was struck with a bullet in the chest. He died later that day.

The state's theory at trial was that Roark intentionally fired the shot that killed Taylor. The jury rejected both the state's theory of intentional homicide and Roark's claim of accident, finding that Roark had committed manslaughter by recklessly causing Taylor's death. *See* AS 11.41.120(a)(1).

At the sentencing hearing, Judge Johnstone, after considering the jury's verdict and the evidence presented at trial, found that Roark had become angered by Taylor's obstinate conduct, armed herself with Taylor's handgun, and confronted him, hoping to force him out of the bathroom by threatening him with the gun. Judge Johnstone believed that the shooting resulted from a struggle over the gun that occurred after Taylor attempted to grab it. Judge Johnstone stated, in relevant part:

> I find ... that the defendant intended to go into the bathroom with a loaded firearm for the purpose of frightening, scaring and intimidating the [victim] into complying with her wishes. That she was angry at the time because of what had gone on before. That she had no intention of actually pulling the trigger at that time and killing the defendant, but that her conduct ... [did] constitute reckless conduct. That she was aware of and consciously disregarded a substantial and unjustifiable risk that death would occur by bringing a loaded firearm in with the intent to scare the defendant. And frighten him, to intimidate him to complying with her wishes. That it would be reasonable under those circumstances for the person in the bathroom to grab the gun thinking that there may be a different intention in mind.

At the sentencing hearing, Roark alleged that her offense was subject to the mitigating factor specified in AS 12.55.155(d)(7), which allows a presumptive term to be reduced when "the victim provoked the crime to a significant degree."[1] Roark contended that, for purposes of this mitigating factor, provocation could be equated with contributing to the commission of the offense. Roark advanced two theories under which she alleged that Taylor's conduct contributed to his own death. First, she argued that it was Taylor's obstinate refus-

---

1. At the sentencing hearing, Roark also alleged the existence of the mitigating factor specified in AS 12.55.155(d)(3) (the offense was committed under duress, coercion, threat, or compulsion). She alternatively requested referral to the three-judge panel under AS 12.55.165. Judge Johnstone found AS 12.55.155(d)(3) to be inapplicable and declined Roark's request for referral to the three-judge panel. On appeal, Roark does not challenge these rulings.

al, over a period of eleven or twelve hours, to leave the bathroom and to stop using cocaine that caused her to confront him with the handgun. Second, she argued that Taylor's act of grabbing for the gun significantly contributed to the ensuing discharge of the weapon.

■ Judge Johnstone rejected both of Roark's theories and concluded that Roark had failed to prove significant provocation by clear and convincing evidence. In relevant part, Judge Johnstone found:

> And I cannot consider that grabbing the firearm is significant provocation under those circumstances. And I cannot consider that the defendant taking drugs, or using the bathroom for 12 hours, or not answering the phone to go to work is the type of provocation that this mitigator envisions to be used under the circumstances. I'm not clearly convinced that that has been established.

On appeal, Roark does not dispute Judge Johnstone's factual findings concerning the circumstances surrounding the shooting. Rather, Roark contends only that the sentencing court incorrectly interpreted the scope of the proposed mitigating factor. Roark argues:

> The trial court in this case rejected the "provocation" mitigator, because the court applied an unduly narrow definition of "provoked." Although the defense attorney at sentencing specifically contended otherwise ..., the court seemed to conclude that only an aggressive act could constitute "provocation" for purposes of this mitigator.... The judge found that the victim's other behavior— his excessive drug use, unreasonable monopoly of the bathroom, and irrational refusal to come out and get ready for work—could not be considered as "the type of provocation that this mitigator envisions to be used under the circumstances."

Roark maintains that when the disputed mitigating factor is properly construed the facts of the case fall squarely within its scope.

Our own reading of Judge Johnstone's findings differs from the reading advocated by Roark. We believe that the judge's remarks, when read in context, do not purport to adopt, as a matter of law, a restrictive interpretation of the disputed mitigating factor. In our view, Roark is incorrect in asserting that the sentencing court concluded, "that only an aggressive act could constitute 'provocation' for purposes of this mitigator." Rather, we believe that the court, relying on its interpretation of the circumstances surrounding the shooting, found as a factual matter that Taylor did not provoke the crime to a significant degree. This seems particularly clear in light of the judge's conclusion, "I'm not clearly convinced that [the mitigating factor] has been established."

In any event, to the extent that Judge Johnstone's ruling implies a narrow reading of the disputed mitigating factor, the narrowing consisted only of rejecting Roark's specific contention that "provoking" a crime could be equated with contributing in any manner to its commission. The position adopted by Roark below was that, for purposes of AS 12.55.155(d)(7), the victim can be found to have "provoked an offense to a significant degree" upon a mere showing that the victim's conduct contributed to the commission of the offense in a causally significant way. It is this argument that Judge Johnstone appears to have rejected. His decision was not error.

As the state correctly notes in urging rejection of Roark's broad reading of the statutory mitigating factor, the victim's conduct causally contributes to the commission of almost all assaultive crimes. A parent who physically abuses an infant might be prompted to do so by the child's persistent crying. While the child's conduct clearly contributes to the abuse in the sense that the parent's crime would not have occurred but for the infant's crying, it would be absurd to conclude that the offense should be deemed mitigated under AS 12.55.155(d)(7) because the infant provoked the crime.

The revised Alaska Criminal Code does not expressly define what constitutes "significant provocation" for purposes of AS

12.55.155(d)(7). A related but separate statutory mitigating factor allows reduction of the presumptive term in cases of assault under AS 11.41.200–.230, "when the defendant acted with serious provocation from the victim." AS 12.55.155(d)(6). Under AS 12.55.155(h), "serious provocation" is given the meaning used in AS 11.41.-115(f)(2) for purposes of the heat of passion defense to murder:

> "Serious provocation" means conduct which is sufficient to excite an intense passion in a reasonable person in the defendant's situation, other than a person who is intoxicated, under the circumstances as the defendant reasonably believed them to be; insulting words, insulting gestures, or hearsay reports of conduct engaged in by the intended victim do not, alone or in combination with each other, constitute serious provocation.

Both parties in the present case agree that, for purposes of the mitigating factor in dispute here, the legislature's choice of the wording "provoked ... to a significant degree" rather than "serious provocation" manifests an intent to apply a broader standard of provocation than the relatively restrictive standard set out for the heat of passion defense in AS 11.41.115(f)(2).

For purposes of the present case it is unnecessary for us to decide the precise limits of the broader standard adopted in AS 12.55.155(d)(7). We believe it preferable, in large measure, to allow sentencing courts to apply the statutory language on a case-by-case basis, guided by the plain and ordinary meaning of its terms. Two observations concerning the standard are nonetheless appropriate.

■ The first observation relates to the requirement that provocation be "significant." The concept of proportionality has traditionally been applied to the heat of passion defense; we have recognized that proportionality is inherent in the statutory definition of "serious provocation" that is set out in AS 11.41.115(f)(2). *See LaPierre v. State*, 734 P.2d 997, 1001–02 n. 3 (Alaska App.1987). *See generally* 2 W. LaFave and A. Scott, *Substantive Criminal Law*

§ 7.10(b) at 256–57 (1986). This same concept must apply under AS 12.55.155(d)(7) to determine whether the defendant's crime was provoked "to a significant degree." The requirement of proportionality involves a common sense balancing of the seriousness of the defendant's crime against the seriousness of the provocation. Even slight provocation may be significant when the offense committed is a minor one; conversely, for a more serious offense, more serious provocation would be required before significant provocation could properly be found.

■ The second observation has to do with the meaning of "provocation." In common usage, "to provoke" means: "1. to excite to some action or feeling 2. to anger, irritate, or annoy 3. to stir up (action or feeling) 4. to call forth; evoke." Webster's New World Dictionary (2d College ed. 1980). This definition plainly suggests something more direct and purposive than a mere causal link between the person who provokes a response and the action or feeling that is provoked. When the victim directs actions or words at the defendant for the express purpose of eliciting a response, it is clear that the defendant may be said to have been "provoked." When the victim's conduct is neither directed at the defendant nor intended to influence the defendant's actions or emotions, however, the mere fact that it has the incidental effect of prompting the defendant to react, thereby contributing in a causal sense to the commission of the crime, would not in itself justify a finding of provocation. Between these two hypothetical extremes is a broad middle ground in which the existence of provocation is best left to a case-by-case determination by the sentencing court, based on the totality of the circumstances.

In the present case, however, it is apparent that Judge Johnstone did not err in rejecting as a matter of law Roark's contention that "provocation" may be found for purposes of AS 12.55.155(d)(7) whenever the victim's conduct significantly contributes, in a causal sense, to the commission of a crime. Nor did the sentencing court err in finding, as a matter of fact,

that Roark failed to establish significant provocation by clear and convincing evidence.

Neither of the two theories relied upon by Roark in support of the proposed mitigating factor is persuasive. Roark's first theory is that Taylor's acts of locking himself into the bathroom, injecting cocaine, and refusing to come out left her at wits' end and prompted her to act recklessly. Although Roark's anger and frustration with Taylor may be understandable, her feelings resulted from conduct on Taylor's part that does not appear to have been primarily directed at Roark or meant to elicit any particular action or emotion on her part. Rather, Taylor's conduct seems to have been primarily self-indulgent; its effect on Roark, although understandable, was to a large extent incidental.

When the nature and extent of Taylor's conduct is compared to the extreme recklessness of Roark's response, Roark's response seems clearly disproportionate. As noted by Judge Johnstone, Roark had just approached Taylor with a large kitchen knife. He had grabbed for the knife and a fight ensued, resulting in wounds to both Roark and Taylor. Roark then elected to arm herself with Taylor's gun so that she could again confront him and attempt to intimidate him into complying with her wishes. The likelihood of a struggle over the gun resulting in death or serious physical injury should have been obvious under the circumstances. To the extent that Taylor's conduct can be said to have provoked Roark to anger, her response was disproportionate to the provocation.

Roark's second theory of provocation is that Taylor's action in grabbing for the gun caused the struggle that resulted in his death and thereby amounted to provocation. Yet as correctly noted by the sentencing court, the recklessness for which Roark was convicted did not occur during her struggle with Taylor over the gun; rather, her recklessness consisted in electing to approach and threaten Taylor with the weapon when it was clear that a struggle was likely to ensue. Taylor's predictable reaction in trying to grab the gun did nothing to provoke the recklessness of Roark's conduct in trying to threaten him with the gun.

Absent clear error, the sentencing court's determination that Roark failed to establish the proposed mitigating factor by clear and convincing evidence must be upheld. *See Walsh v. State*, 677 P.2d 912, 916 (Alaska App.1984). We find no clear error in the present case. Having independently reviewed the sentencing record, we further conclude that the sentence imposed below is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.