**Michael A. SILVERA, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10269.

Court of Appeals of Alaska.

Dec. 17, 2010.

**23.** *Roussel v. State,* 115 P.3d 581, 585 (Alaska App.2005).

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

*OPINION*

BOLGER, Judge.

Michael A. Silvera was convicted of second-degree assault after he cut David Moore in the face with a knife during an argument between Moore and Silvera's fiancée. Silvera argues that there was insufficient evidence for the jury to find that his conduct was not justified in defense of his fiancée. We conclude after reviewing the record that there was sufficient evidence for the jury to find that Silvera's assault was not justified.

Silvera also argues, for the first time on appeal, that he was entitled to an evidentiary hearing on his claim that the prosecutor rolled his eyes and engaged in other nonverbal conduct that impermissibly conveyed his personal opinion of the evidence to the jury. We conclude that Silvera has not shown that the court's failure to hold a hearing was plain error.

Silvera attacks his sentence on two grounds. He argues that the sentencing court was clearly mistaken in refusing to refer his case to the three-judge sentencing panel for consideration of his extraordinary potential for rehabilitation and the harsh collateral consequences of his one-year sentence. He also argues that the sentencing court erred by rejecting his claim that his assault was mitigated due to "serious provocation" by the victim. We conclude that the sentencing court was not clearly mistaken in refusing to refer Silvera's case to the three-judge panel. But we conclude that the sentencing court applied the wrong legal test in ruling that Silvera had failed to establish the statutory mitigating factor of "serious provocation" by the victim. We therefore remand the case to the superior court for reconsideration of this issue.

### Facts and proceedings

Early on the morning of June 3, 2007, Richard Weinstein, a taxicab driver in Nome, picked up passengers outside a bar called the Dexter Roadhouse, which had just closed for the night. All of the passengers had been drinking. Michael Silvera sat in the front passenger seat of the cab and his fiancée, Andrea Surina, sat next to him on the same seat, sitting sideways facing the driver. David Moore sat on the bench seat directly behind the driver, and his friend, Chris Christensen, sat next to him. There was another bench seat behind that, occupied by Briday Green, a friend of Silvera's, and Green's companion, John MacInerney.

Surina asked Weinstein to take the scenic route home so they could look for wildlife. Moore objected, saying he wanted to go directly home because he had to work that morning. An argument ensued. Silvera managed to calm Surina down, bringing a temporary end to the argument. But then the argument "flared up like a grease fire." According to Silvera, Moore called Surina a "whore." Weinstein testified that Surina and Silvera both jumped out of their seat toward Moore, and that Silvera said, "I'm going to kill you," and cut Moore in the face with a knife. MacInerney intervened, grabbing Silvera's arm and holding it, even though Silvera yelled at him to let go. In an effort to avoid more violence, Weinstein dropped Silvera and Surina off at their residence before driving Moore to the emergency room. Once all the other passengers had been delivered to their destinations, Weinstein reported the incident to the police. Moore had a knife wound to the left temple that required nine stitches and left a scar.

Nome Police Officers Greg Bonham and Mark Harreus interviewed Silvera and Surina at their residence later that morning. Silvera initially denied cutting Moore with a knife, saying he used his fist. But before long Silvera acknowledged that he had a knife in his hand when he hit Moore, and he retrieved the knife and gave it to the police. He had already washed the blood off the knife. The knife was a lock-back knife with a three-inch blade and a thumbscrew that made it easy to open quickly.

At trial, Silvera testified that he attacked Moore to protect Surina. He said Moore kicked Surina and called her a whore, and

then reached toward Surina as if he was going to hit her. Silvera said he pushed Surina out of the way and got up and hit Moore. He said he never intended to use a knife but had absent-mindedly been fiddling with the knife in his pocket. He said he was surprised when he got home and saw blood on the knife.

Silvera called several witnesses on his behalf. Dennis Hammond, another cab driver, testified that he heard Weinstein tell another cab driver on the dispatch line that he did not know what happened during the incident because he was concentrating on driving. Briday Green, the friend of Silvera's who had been riding in the back seat of the cab, testified that she saw the victim, Moore, get out of his seat and move toward Surina and Silvera, and that MacInerney had to restrain Moore. She said she never saw Silvera move from his seat. But Green admitted on cross-examination that this was not what she told the police; she told the police that Silvera may have gone after Moore twice, and that Surina and MacInerney had to restrain Silvera.

At the close of the State's case, Silvera made a motion for judgment of acquittal, which Superior Court Judge Ben J. Esch denied.

In closing argument, Silvera claimed that his conduct was justified because he acted in defense of Surina. The jury rejected this defense and convicted Silvera of second-degree assault.[1]

After the jury's verdict, but before sentencing, Silvera filed a motion for a new trial, arguing that five jurors had witnessed eye-rolling and other inappropriate facial expressions by the prosecutor throughout the trial. Silvera argued that this conduct deprived him of a fair trial because it conveyed the prosecutor's personal opinion about his guilt and veracity, and suggested that the prosecutor had personal knowledge of facts not in evidence. Judge Esch denied the motion, ruling that Alaska Evidence Rule 606(b) prohibited this inquiry into the subjective mental processes of the jurors.

At sentencing, Judge Esch rejected Silvera's proposed mitigators and his request that the case be referred to the three-judge panel. He sentenced Silvera to two years with one year suspended. Silvera appeals.

### Discussion

*There was sufficient evidence to convict Silvera of second-degree assault.*

■ Silvera's first claim is that there was insufficient evidence to convict him of second-degree assault. In ruling on a claim of insufficient evidence, this court must consider the evidence in the light most favorable to the jury's verdict and determine whether a fair-minded juror could find guilt beyond a reasonable doubt.[2]

■ As charged in this case, second-degree assault required proof that Silvera intended to cause physical injury to Moore, and that Silvera caused this injury "by means of a dangerous instrument."[3] Silvera does not dispute the State's proof of these elements of the offense. Instead, he claims that there was insufficient evidence for the jury to find that his conduct was not justified. Because Silvera offered some evidence that he acted in defense of Surina, the State had to prove beyond a reasonable doubt that Silvera did not act reasonably in defense of others.

A person is justified in using force to defend a third person if he reasonably believes the third person would be justified in using that degree of force in self-defense.[4] A

---

1. AS 11.41.210(a)(1).

2. *Morrell v. State,* 216 P.3d 574, 576 (Alaska App.2009); *Daniels v. State,* 767 P.2d 1163, 1167 (Alaska App.1989).

3. AS 11.41.210(a)(1).

4. AS 11.81.340 provides:

 A person is justified in using force upon another when and to the extent the person reasonably believes it is necessary to defend a third person when, under the circumstances as the person claiming defense of another reasonably believes them to be, the third person

person is justified in using nondeadly force[5] when and to the extent the person reasonably believes it is necessary to defend against unlawful force by the other person.[6] A person is justified in using deadly force when and to the extent the person reasonably believes it is necessary to defend against death or serious physical injury.[7] A person uses "deadly force" when he uses force knowing that the circumstances create a substantial risk of death or serious physical injury.[8]

Silvera argues that the State did not present enough evidence that he knew his conduct posed a risk of death or serious physical injury to prove that he used deadly force when he struck Moore, given his testimony that he was not aware a knife was in his hand. But the jury was not required to believe Silvera's testimony on this issue. Moreover, we need not decide whether the State presented enough evidence to prove that Silvera used deadly force, because a fair-minded juror could find based on the evidence in this case that Silvera was not justified in using even nondeadly force in defense of Surina.

At trial, Moore testified that he had a heated argument with Silvera and Surina, but that the argument was not physical until Silvera attacked him with a knife. Weinstein, the cab driver, testified that he did not see Moore leave his seat or act aggressively, and that he did not hear Moore say anything to precipitate Silvera's attack. (Green and Silvera both testified that Moore called Surina a "whore.") Weinstein said he saw Surina leap into the back seat, and that Silvera followed almost immediately. Weinstein heard Silvera say, "I'm going to kill you" twice. Then someone in the cab said, "Oh my God. You're cut, you're bleeding." Weinstein saw MacInerney grab Silvera's arm and hold it, even though Silvera yelled at him to let go. Weinstein said when he reported the incident to the police, he showed them that there was blood on the seat where Moore had been sitting.

Christensen, who was sitting next to Moore, testified that he did not see Moore do anything to provoke the attack. Green, who was sitting in the back seat, testified that Moore got out of his seat and moved toward Surina and Silvera, and that Silvera never moved from the front seat. But Green admitted that she did not tell the police this when she was interviewed shortly after the assault. At that time, she told the police that Silvera may have gone after Moore twice, and that Surina and MacInerney had to hold Silvera back.

Given this record, a fair-minded juror could find that there was no violence or threat of violence until Silvera leaped into the back seat and cut Moore in the face with a knife. A fair-minded juror could also find that Silvera threatened to kill Moore twice, and that other passengers had to restrain Silvera from assaulting Moore a second time. Lastly, a fair-minded juror could find that a reasonable person in Silvera's position would not conclude based on this evidence that any force, even nondeadly force, was necessary to defend Surina against Moore.

Silvera argues that no reasonable juror could reject his testimony that Moore kicked Surina and made an aggressive move toward her. He argues that Weinstein's contrary testimony that the attack on Moore was unprovoked was not credible because Weinstein was watching the road and could not have seen what Moore was doing in the back seat. In other words, Silvera argues that we should view the evidence in the light most favorable to him, crediting his testimony about Moore's conduct and discrediting the testimony of Weinstein, Moore, and Christensen. But when we rule on a claim of

---

would be justified under AS 11.81.330 or 11.81.335 in using that degree of force for self-defense.

**5.** *See* AS 11.81.900(b)(38) ("'nondeadly force' means force other than deadly force").

**6.** AS 11.81.330(a).

**7.** AS 11.81.335(a)(1)-(2).

**8.** AS 11.81.900(b)(16).

insufficient evidence, we do not weigh the credibility of witnesses, we view the evidence in the light most favorable to the jury's verdict.[9] Applying this rule, we conclude that the State presented sufficient evidence for a fair-minded juror to find that Silvera's assault on Moore was not justified.

*The court's failure to hold an evidentiary hearing to determine whether the prosecutor engaged in misconduct was not plain error.*

■ After the jury's verdict, Silvera's attorney filed a motion for a new trial, asserting that a number of jurors had witnessed eye-rolling and other nonverbal conduct by the prosecutor that conveyed the prosecutor's personal opinion regarding Silvera's guilt and veracity and suggested that the prosecutor had personal knowledge of facts outside the record. Silvera's attorney claimed she had not seen this conduct during trial due to the layout of the courtroom, and therefore did not object or request a curative instruction. The attorney supported her motion with an affidavit stating that a number of jurors told her they observed this conduct by the prosecutor throughout the trial. The attorney's affidavit went on to relate the influence this conduct had on the jury's deliberations.

Based on this affidavit, Judge Esch found that "it appears ... that jurors did receive information that [the prosecutor] was communicating with body language or otherwise." But Judge Esch ruled that Evidence Rule 606(b) barred him from considering any evidence concerning what the jurors observed, because that inquiry would necessarily take account of the jurors' mental processes.[10]

Silvera filed a motion for reconsideration, arguing that the trial court had misinterpreted Evidence Rule 606(b). Silvera argued that it was unnecessary for the court to inquire into the jurors' subjective interpretations of the prosecutor's conduct to establish that a new trial was warranted—the court only had to find that the prosecutor's conduct "in fact convey[ed] a personal opinion and [that] it is objectively likely that any one of the jurors would be influenced by that personal opinion." Silvera did not ask the court for an evidentiary hearing; instead, he submitted additional affidavits recounting the interviews with the jurors, and asked the court to grant him a new trial based on those affidavits. Judge Esch did not rule on the motion for reconsideration, so it was deemed denied.[11]

■ Silvera now argues that Judge Esch erred by not granting him an evidentiary hearing "to determine what, if anything, the jurors witnessed." Because Silvera did not ask for this hearing in superior court, he must show plain error.[12]

The Alaska Supreme Court and this court have held that it is improper for a prosecuting attorney to express a personal opinion concerning the credibility of a witness or the guilt of the accused.[13] In *Darling v. State,*

---

**9.** *Anthony v. State,* 521 P.2d 486, 492 (Alaska 1974).

**10.** Evidence Rule 606(b) provides that:

Upon an inquiry into the validity of a verdict or indictment, a juror may not be questioned as to any matter or statement occurring during the course of the jury's deliberations or to the effect of any matter or statement upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention

or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

**11.** *See* Alaska R.Crim. P. 42(k)(4).

**12.** *See Owen M. v. State, Office of Children's Servs.,* 120 P.3d 201, 203 (Alaska 2005).

**13.** *Darling v. State,* 520 P.2d 793, 794 (Alaska 1974); *Noel v. State,* 754 P.2d 280, 283 (Alaska App.1988).

the supreme court explained the reasoning behind this rule:

> The vice sought to be guarded against by such a rule is the introduction into evidence of the unsworn testimony of counsel in which he states either explicitly or implicitly that his opinion as to the credibility of a witness is based upon personal knowledge of the witness.[14]

At issue in *Darling* were remarks the prosecutor made during his closing argument to the jury, which were part of the formal record of the trial.[15]

In this case, the conduct at issue was apparently witnessed only by the jury and did not come to the attention of Silvera's attorney or the trial judge until after the jury returned its verdict. Consequently, the only evidence Silvera presented to Judge Esch were the assertions of jurors.

Evidence Rule 606(b) generally prohibits parties from offering juror testimony or affidavits to impeach the jury's verdict. The aim of this limitation is "to protect jurors from harassment, to encourage free jury deliberation, and to promote the finality of verdicts."[16] Because of the competing interest in "ensuring that verdicts are accurate and that they are reached through a fair process,"[17] Rule 606(b) contains two express exceptions: it allows juror testimony or affidavits if they are offered to establish (1) "whether extraneous prejudicial information was improperly brought to the jury's attention" or (2) "whether any outside influence was improperly brought to bear upon any juror."[18]

■ Even in these limited circumstances courts may not consider juror testimony or affidavits that concern the *effect* of extraneous information or outside influence on a juror's reasoning process. A court evaluating the likelihood that a juror's vote was influenced by potentially prejudicial matter outside the record "must apply an objective test and is precluded from considering evidence concerning the subjective impact of the extraneous matter on any juror."[19] This approach, articulated in the commentary to ABA Standard 8–3.7,

> directs the court's inquiry only to the *fact* of exposure to extrajudicial material. The ultimate issue of influence on the juror is resolved by reference to the substantial likelihood test, an objective standard. In effect, the court must examine the extrajudicial material and then judge whether it is inherently likely to have influenced the juror.[20]

Citing this authority, Silvera argues that the superior court should have considered the jurors' assertions in the affidavits he offered to the extent that they established the objective facts of the prosecutor's eye-rolling and other nonverbal conduct.

It could be argued that the juror affidavits submitted by Silvera were wholly inadmissible. The relevant portion of Evidence Rule 606(b) states that a court is prohibited from receiving the testimony or affidavits of jurors when offered to impeach a verdict, unless the testimony or affidavits relate to "whether extraneous prejudicial information was improperly brought to the jury's attention." This court has stated that, for purposes of Rule 606(b), "extraneous" information means information that reaches the jurors other than through the normal trial process. Thus, when a lawyer engages in improper argument, or when a witness gives a non-responsive answer, or offers objectionable tes-

---

14. *Darling*, 520 P.2d at 794.

15. *Id.* at 793–94.

16. *Titus v. State*, 963 P.2d 258, 261 (Alaska 1998).

17. *Id.*

18. Alaska R. Evid. 606(b); *Larson v. State*, 79 P.3d 650, 654 (Alaska App.2003); *see Swain v. State*, 817 P.2d 927, 932–33 (Alaska App.1991).

19. *Swain*, 817 P.2d at 932.

20. *Id.* (citing II *Standards for Criminal Justice* commentary to § 8–3.7 at 58 (Approved Draft 1978 & Supp.1982)).

timony, or makes an otherwise improper statement in open court, these improprieties do not constitute "extraneous" information within the meaning of Rule 606(b).[21]

We are aware of some federal authority suggesting that there may be occasions when information that reaches the jury through the normal trial process may still be deemed "extraneous" for purposes of the federal analog to Evidence Rule 606(b).[22] The parties have not briefed this issue. And, as we are about to explain, we need not resolve this issue—because, even if the affidavit Silvera submitted in superior court was admissible under Evidence Rule 606(b), it fails to establish that Silvera is entitled to relief.

■ During argument on Silvera's new trial motion, Silvera's attorney submitted an affidavit summarizing what the jurors had told her about the prosecutor's conduct. For purposes of this decision, we accept as true the statements attributed to the jurors in this affidavit. We do not consider the additional affidavits attached to Silvera's motion for reconsideration.[23] We also disregard those statements in the attorney's affidavit concerning the subjective impact of the prosecutor's conduct on the jurors.[24] The balance of the affidavit asserts only that the prosecutor rolled his eyes and made other body movements and facial expressions during the trial.[25]

To some degree, a lawyer's body language or facial reactions to the testimony of witnesses presented by the opposing party might be viewed as a natural occurrence during a heated trial. The affidavit that Silvera submitted does not connect the prosecutor's challenged conduct to the testimony of any particular witness or to any particular piece of evidence; nor does the affidavit establish with any certainty how pervasive the prosecutor's reactions were, or whether the prosecutor appeared to be intentionally directing these reactions to the members of the jury.

Nor can we speculate as to how the prosecutor's body language or facial expressions affected the jurors' deliberations. Indeed, we must presume that the jurors followed the trial judge's instructions that the arguments of counsel were not evidence, and that the jurors should disregard counsels' characterizations of the evidence to the extent that these characterizations departed from the testimony actually given in court.

We thus conclude that Silvera has not met his burden to show that he was prejudiced by the prosecutor's conduct.[26] That is not to say that we approve of an attorney engaging in nonverbal conduct that potentially conveys the attorney's personal opinion of the evidence or the credibility of witnesses to the jury. But the affidavits submitted by Silvera do not establish that the prosecutor intentionally engaged in conduct of that nature. Moreover, regardless of whether the prosecutor's conduct was intentional or inadvertent, the affidavits do not establish that the prosecutor's conduct was so prejudicial that it was likely that Silvera's jury was influenced by it.

---

**21.** *Turpin v. State,* 890 P.2d 1128, 1131 (Alaska App.1995) (citing 2 Stephen A. Saltzburg, et al., *Federal Rules of Evidence Manual* at 777 (6th ed.1994)); *see also Tellier v. Ford Motor Co.,* 827 P.2d 1125, 1127 n. 1 (Alaska 1992) (stating that an improper reference to a party's prior conviction in a trial exhibit is not "extraneous" information); *Larson,* 79 P.3d at 657–59 (holding that juror discussions about a defendant's guilt before the case was submitted to the jury were not "extraneous" information).

**22.** *See United States v. Hall,* 85 F.3d 367, 368–69 (8th Cir.1996); *United States v. Scisum,* 32 F.3d 1479, 1481, 1483 (10th Cir.1994); *United States v. Bruscino,* 662 F.2d 450, 456 (7th Cir.1981), *aff'd en banc,* 687 F.2d 938 (7th Cir.1982).

**23.** *See Dunn v. Dunn,* 952 P.2d 268, 271 n. 2 (Alaska 1998) ("[It] is not appropriate to present new evidence on a motion for reconsideration.").

**24.** *Swain,* 817 P.2d at 932.

**25.** The affidavits submitted with the motion for reconsideration state that the prosecutor rolled his eyes, nodded his head, scoffed, and sighed.

**26.** *See Howell v. State,* 917 P.2d 1202, 1213 (Alaska App.1996).

The facts asserted in Silvera's attorney's affidavit do not present any material factual dispute on the issue of prejudice that would have required an evidentiary hearing.[27] The superior court therefore did not commit plain error when it failed to hold an evidentiary hearing *sua sponte.*

*The superior court applied the wrong legal test in rejecting Silvera's proposed mitigator that he acted in response to serious provocation by the victim.*

Silvera next argues that Judge Esch erred in rejecting two of his proposed mitigators: that the defendant in committing felony assault acted with serious provocation from the victim,[28] and that the victim provoked the crime to a significant degree.[29]

■ The existence of a mitigating factor is a mixed question of law and fact. On review, we must first assess the nature of the defendant's conduct—a factual finding reviewed for clear error—and then make the legal determination as to whether that conduct falls within the mitigating factor defined by statute.[30]

■ Because Silvera was convicted of second-degree assault, only the (d)(6) mitigator applies in his case. As we explained in *Smith v. State*[31]:

mitigator (d)(7) does not apply to defendants who are being sentenced for felony assault under AS 11.41.200–220. Instead, mitigator (d)(6) defines the standard of provocation that, if proved, will mitigate these felony assaults, and mitigator (d)(7) defines the lesser standard of provocation that applies to all other felonies (except

sexual felonies, which are not mitigated by provocation).[32]

For purposes of the (d)(6) mitigator, "serious provocation" has the meaning applied to the heat of passion defense[33]:

"serious provocation" means conduct which is sufficient to excite an intense passion in a reasonable person in the defendant's situation, other than a person who is intoxicated, under the circumstances as the defendant reasonably believed them to be; insulting words, insulting gestures, or hearsay reports of conduct engaged in by the intended victim do not, alone or in combination with each other, constitute serious provocation.[34]

The nature of the provocation in this case is not entirely clear. The jury's verdict did not necessarily resolve whether Silvera cut Moore with a knife because Moore called Surina a "whore" or, as Silvera claimed, because Moore kicked Surina and came at her aggressively. Nor did Judge Esch make findings on this issue at sentencing. Instead, Judge Esch ruled as a matter of law that Moore's conduct did not amount to "provocation" because it was not directed at Silvera or intended to influence his actions or emotions.

Judge Esch's ruling was based on our decision in *Roark v. State.*[35] Roark was convicted of manslaughter for the shooting death of Taylor, the man she lived with.[36] According to the sentencing judge's findings, Roark became angry with Taylor for using cocaine and locking himself in the bathroom for an extended period, and confronted him with a gun in the hope of forcing him out of the bathroom. Taylor opened the door and tried to grab the gun from Roark and was shot

**27.** *See* Alaska R.Crim. P. 42(e)(3).

**28.** AS 12.55.155(d)(6).

**29.** AS 12.55.155(d)(7).

**30.** *Michael v. State,* 115 P.3d 517, 519 (Alaska 2005).

**31.** 229 P.3d 221 (Alaska App.2010).

**32.** *Id.* at 226.

**33.** *See* AS 12.55.155(h).

**34.** AS 11.41.115(f)(2).

**35.** 758 P.2d 644 (Alaska App.1988).

**36.** *Id.* at 644.

and killed in the ensuing struggle.[37]

At sentencing, Roark unsuccessfully sought mitigator (d)(7), arguing that Taylor had "provoked the crime to a significant degree." [38] In affirming the sentencing court's rejection of that mitigator, we stated:

> When the victim directs actions or words at the defendant for the express purpose of eliciting a response, it is clear that the defendant may be said to have been "provoked." When the victim's conduct is neither directed at the defendant nor intended to influence the defendant's actions or emotions ... the mere fact that it has the incidental effect of prompting the defendant to react, thereby contributing in a causal sense to the commission of the crime, would not in itself justify a finding of provocation. Between these two hypothetical extremes is a broad middle ground in which the existence of provocation is best left to a case-by-case determination by the sentencing court, based on the totality of the circumstances.[39]

As this explanation makes clear, we did not declare in *Roark* that a finding of significant provocation requires in every case conduct that is directed at the defendant or intended to influence the defendant's actions or emotions. Rather, we held that the provocation in *Roark*—behavior that was not directed at the defendant (or anyone else), and that only incidentally caused the defendant's offense— fell at the far end of a continuum, and could not properly be viewed as significant provocation. Although in *Roark* we addressed mitigator (d)(7), we see no logical reason why our holding, which relied on the common

meaning of "provoke," would not also apply to the (d)(6) "serious provocation" mitigator.

Judge Esch's interpretation of *Roark* would preclude a finding of provocation in any case in which the provocation was directed at a third party. This broad interpretation of *Roark* would prohibit a finding of serious provocation in circumstances in which the heat of passion defense has traditionally been allowed.[40] The classic provocation envisioned by the common law was the defendant's observation of a spouse's adultery,[41] conduct that in the normal case is not directed at the defendant or intended to provoke his response. As we have previously noted, in adopting the definition of serious provocation, the Alaska Legislature apparently intended to codify the common-law doctrine of heat of passion.[42]

Because Judge Esch rejected mitigator (d)(6) on the ground that Moore's provocation was not directed at, or intended to influence, Silvera, the judge did not resolve disputed facts as to what type of provocation occurred; nor did he consider whether that provocation, if any, established the (d)(6) mitigator in other respects. We therefore remand the case for reconsideration of this question. We note that the (d)(6) mitigator requires provocation "sufficient to excite an intense passion in a reasonable person in the defendant's situation" [43]—the same amount or degree of provocation that would reduce a murder to manslaughter.[44] We have also held that "an element of proportionality [is] implicit in the heat of passion statute's requirement that provocation be 'serious.'" [45] "Th[is] requirement of proportionality involves a common

**37.** *Id.* at 645.

**38.** *Id.*

**39.** *Id.* at 647.

**40.** *See Dandova v. State,* 72 P.3d 325, 339 (Alaska App.2003); 2 Wayne R. LaFave, *Substantive Criminal Law,* § 15.2(b)(5), (b)(7) at 498, 502 (2d ed.2003).

**41.** *See Dandova,* 72 P.3d at 339; 2 LaFave, *Substantive Criminal Law,* § 15.2(b)(5) at 498.

**42.** *Howell,* 917 P.2d at 1209; *see also Martin v. State,* 664 P.2d 612, 616–17 (Alaska App.1983)

(discussing the common-law roots of the Alaska statute).

**43.** AS 11.41.115(f)(2).

**44.** *Smith,* 229 P.3d at 225.

**45.** *Howell,* 917 P.2d at 1207 n. 4 (citing *Roark,* 758 P.2d at 647–48); *see also Dandova,* 72 P.3d at 333 (recognizing this as the common-law rule).

sense balancing of the seriousness of the defendant's crime against the seriousness of the provocation."[46]

*The court was not mistaken in rejecting non-statutory mitigating factors.*

■ Silvera asked the sentencing court to refer his case to a three-judge panel for consideration of two non-statutory mitigating factors: exceptionally good potential for rehabilitation and harsh collateral consequences.

■ A defendant is entitled to have his case referred to the three-judge sentencing panel if he proves two things by clear and convincing evidence: a mitigating factor not listed in AS 12.55.155(d), and that "it would be manifestly unjust to fail to adjust the presumptive term based on [this] non-statutory factor."[47] Referral to the three-judge panel should occur only in exceptional cases.[48]

In sentencing Silvera to two years with one year suspended for second-degree assault, Judge Esch stressed the *Chaney* criteria of deterrence of others and reaffirmation of societal norms.[49] He found that Silvera's background did not demonstrate a "significant need of rehabilitation," and that isolating Silvera from the public "really isn't a factor." Judge Esch nevertheless declined to find the non-statutory factor of extraordinary prospects for rehabilitation. He explained:

> The court has before it a 49–year–old first felony offender. He has two prior misdemeanors for a DUI and a driving while license suspended some time ago. Fifteen, 18 years, whatever it was. He has an honorable discharge from the military. I

believe he has job skills that have stood him in good stead in the past, and he's suffering from an existing medical condition that makes it impossible for him to work and carry those things forward; he's on disability. He evidences remorse for what happened, but I don't believe those things constitute in and of themselves an extraordinary prospect for rehabilitation. So I will not find that [the] non-statutory ... mitigating factor exists.

Silvera argues that the sentencing court's rejection of this factor was error given the court's explicit findings that he "had no need for rehabilitation and was not a danger [to society]."

■ To establish the non-statutory mitigating factor of extraordinary prospects for rehabilitation, it was not enough for Silvera to show that he was genuinely remorseful and that his prospects for rehabilitation were better than the average[50]:

> The superior court is justified in concluding that a defendant has unusually good potential for rehabilitation only when "the court is satisfied, after reviewing the totality of the circumstances, that [the defendant] can adequately be treated in the community and need not be incarcerated for the full presumptive term in order to prevent future criminal activity." Such a prediction ... should only be made when the sentencing court is reasonably satisfied both that it knows why a particular crime was committed and that the conditions leading to the criminal act will not recur— either because the factors that led the defendant to commit the crime are readily correctable or because the defendant's criminal conduct resulted from unusual environmental stresses unlikely ever to recur.[51]

---

**46.** *Roark,* 758 P.2d at 647.

**47.** *Bossie v. State,* 835 P.2d 1257, 1258 (Alaska App.1992); *see also Lloyd v. State,* 672 P.2d 152, 154–55 (Alaska App.1983); AS 12.55.165.

**48.** *Lloyd,* 672 P.2d at 155.

**49.** *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

**50.** *Boerma v. State,* 843 P.2d 1246, 1248 (Alaska App.1992); *Lepley v. State,* 807 P.2d 1095, 1099–1100 (Alaska App.1991).

**51.** *Lepley,* 807 P.2d at 1100 (quoting *Kirby v. State,* 748 P.2d 757, 766 (Alaska App.1987)).

Judge Esch did not make explicit findings on these issues. But based on the record, he reasonably could have concluded that Silvera had not adequately explained what precipitated his attack on Moore or convinced the court that the conditions that led to the attack were unlikely to recur. Silvera testified that he witnessed customers get "mouthy and nasty" with his fiancée in the bar where she worked "all the time," but that he had never responded violently before. He said on the night in question he reacted "[i]n the heat of the situation," "instantaneously," and without reflection. He did not assert that the assault was due to unusual stresses in his life that were unlikely to be repeated; instead, he claimed that his actions were justified in defense of Surina and that he did not intend to injure Moore—both claims the jury rejected when it convicted him of second-degree assault. Given this record, Judge Esch could reasonably conclude that even though Silvera's background demonstrated no significant need for rehabilitation, he had not shown that his potential for rehabilitation was so unusually good that his case must be referred to the three-judge panel.

 Silvera also argues that the harsh collateral consequences of a sentence within the presumptive range required Judge Esch to refer his case to the three-judge panel. Silvera identified the harsh collateral consequences as deportation if he received a sentence of one year or more and the concomitant loss of the quality medical care he currently receives through the Veterans Administration. He pointed out that under the immigration code, a defendant convicted of a crime of violence and sentenced to at least one year, including suspended time, is guilty of an "aggravated felony" and is subject to deportation.[52] Judge Esch concluded that the collateral consequences advanced by Silvera "certainly are significant, but I can't find they're manifestly unjust."

 Collateral consequences, including deportation, are appropriate sentencing considerations,[53] and Silvera faces a particularly harsh consequence because he is disabled by illness and reportedly will lose his current medical treatment as a military veteran if he is deported. But reducing Silvera's two-year sentence to less than one year, including suspended time, to remove his offense from the federal definition of "aggravated felony" would result in a considerably more lenient sentence than the facts of this case would support—a more lenient sentence than a defendant with Silvera's background would receive if he were not subject to deportation. Given this circumstance, Judge Esch was not clearly mistaken in concluding that a sentence within the presumptive range was not manifestly unjust.[54]

### Conclusion

Because the superior court applied the wrong legal analysis in rejecting the "serious provocation" mitigator at sentencing, we RE-MAND the case for reconsideration of that issue. We do not retain jurisdiction. In other respects, we AFFIRM the decisions of the superior court.

**52.** Under 8 U.S.C. § 1227(a)(2)(A)(iii), "any alien who is convicted of an aggravated felony at any time after admission is deportable." An aggravated felony is defined in 8 U.S.C. § 1101(a)(43)(F) as "a crime of violence ... for which the term of imprisonment [is] at least one year." Section 1101(a)(48)(B) provides that "[a]ny reference to a term of imprisonment or a sentence ... is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the impo-sition or execution of that imprisonment or sentence in whole or in part."

**53.** *Dale v. State,* 626 P.2d 1062, 1064 n. 4 (Alaska 1980); *State v. Tucker,* 581 P.2d 223, 226 n. 5 (Alaska 1978); *Chaney,* 477 P.2d at 446 n. 22.

**54.** *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974); *Lloyd,* 672 P.2d at 154–55.