Judge MANNHEIMER, concurring.
*352 I write separately to describe the historical background of our current sexual assault statutes, particularly with regard to the element of "without consent", and also to describe how other states have interpreted the requirement of coercion. I then apply Alaska's law of coercion to the facts of Inga's case.
The historical background of our sexual assault statutes and the element of "without consent"
For purposes of Alaska's sexual assault statutes, the phrase "without consent" has a special meaning that differs significantly from its everyday meaning. Under AS 11.41.470(8)(A), unwanted sexual conduct occurs "without consent" only if the person "is coerced by the use of force ... or by the express or implied threat of death, imminent physical injury, or kidnapping".
Thus, the statutory phrase "without consent" does not cover all instances where the other person does not subjectively consent to the sexual activity. Rather, sexual activity occurs "without consent" only if the victim was coerced to engage in the sexual activity by force or by the types of threat specified in the statute. See AS 11.41.470(8)(A).
This statutory definition is a modified version of the common law that applied to the crime of rape. At common law, the crime of rape was defined as "carnal knowledge of a woman forcibly and against her will".[1] These two concepts - "forcibly" and "against the victim's will" were related, but they were not the same.
The majority view at common law was that these two phrases - "forcibly" and "against the victim's will" - were two separate elements of the crime of rape, and the government was required to prove both of these elements.[2] Thus, even when the woman did not wish to engage in the act of intercourse, there was no rape if the coercion was not "forcible" - for example, if the woman acquiesced in an act of intercourse against her will because the offender threatened to fire her from her job, or threatened to expose some humiliating secret, if she refused.[3]
Before the enactment of Alaska's current criminal code, the crime of rape was defined by former AS 11.15.120(a), a statute that tracked this common-law definition of the crime. Under this former statute, the crime of rape consisted of "carnal knowledge of another person, forcibly and against the will of the other person".
The Commentary to our current criminal code shows that the drafters wanted to abandon this common-law formulation of the crime because they wanted to "[e]liminate[ ] ... any contention that ... a victim must forcibly resist a sexual assault to the utmost" or "that [the victim's] resistance must continue until the act has been terminated."[4]
In place of "forcibly" and "against the will of the other person", the drafters proposed a new phrase, "without consent". Under this new element of "without consent", the government would be required to prove that the victim, "with or without resisting", was "coerced by the use of physical force against a person or property, or by the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone".
The Alaska Legislature ultimately adopted this proposal and codified it in AS 11.41.470(8)(A).
But this new element, "without consent", still tracks the basic elements of common-law rape. The government must prove (1) that the victim was coerced into engaging in sexual activity that they otherwise were not willing to engage in, and (2) that this coercion *353 took the form of force or the types of threat specified in the statute.
Alaska has a statutory definition of "force" which is quite expansive. Under AS 11.81.900(b)(28), "force" includes "any bodily impact" or "threat of imminent bodily impact". Since all sexual contact includes some degree of "bodily impact", one might argue that all sexual contact is, by definition, "coerced by the use of force" if the victim does not subjectively consent to the contact.
While this might appear to be a plausible reading of the two statutes, this would be a significant departure from the rule at common law.
At common law, a non-consensual act of sexual intercourse was deemed "forcible" only if it was achieved by physical compulsion apart from the force or impact inherent in the act of sexual intercourse itself.[5] The common law required proof that the act of intercourse was achieved by some additional degree of force - either proof that the victim resisted and was overcome by force, or proof that the victim would have resisted but was intimidated into submission by force or the threat of imminent force.
In light of this common-law background of modern sexual assault statutes, courts in other states have held that, in prosecutions for sexual assault, the government must establish that the defendant used more force than simply the touching or "bodily impact" required to accomplish the sexual activity.[6]
Alaska's sexual assault statutes are likewise derived from this common-law root. Although the drafters of our current criminal code replaced the phrase "forcibly and against the will" with the new phrase "without consent", the drafters never indicated that they wanted to eliminate the common-law requirement that the force accompanying the sexual act had to exceed the bodily impact inherent in the sexual act itself.
How other states have answered the question of what type or degree of force is required to establish that a sexual act was "coerced by the use of force"
In a prosecution for sexual assault, the State must prove that the defendant subjected the victim to coercive force or a coercive threat of force, and this force must exceed the bodily impact inherent in the act of sexual contact or sexual penetration itself. But what exactly does this mean?
Some states have divided their sex offenses into different levels - the higher level consisting of sexual activity that is coerced by force, and the lower level consisting of sexual activity where the victim does not consent, but where there is no forcible coercion. Because of this distinction between the levels of sexual offenses, the courts in these states have had to directly address the question of what type or degree of force must be proved when the government alleges that the sexual activity was coerced by force.
The Oregon Supreme Court's decision in State v. Marshall , 350 Or. 208, 253 P.3d 1017 (2011), is a good example of how courts have resolved this question.
Under Oregon law, nonconsensual sexual contact is third-degree sexual abuse, a class A misdemeanor,[7] unless the state proves that the victim was subjected to "forcible compulsion" - in which case the crime is elevated to first-degree sexual abuse, a class B felony.[8]
Oregon law defines "forcible compulsion" using language that is analogous to the language found in Alaska's definition of "without consent". Under Oregon law, a sexual act is accomplished by "forcible compulsion" if the act is compelled by physical force, or if it is compelled by a threat (express or implied) that the person will be killed or injured, or *354 that the person or someone else will be kidnapped.[9]
In Marshall , the Oregon Supreme Court provided a fuller explanation of this concept of "forcible compulsion".
First, if the government charges the defendant with using force against the victim, this force must be greater than, or qualitatively different from, the movement or bodily impact that is inherent in the charged act of sexual contact.[10] Second, the government must prove that there was a causal relationship between the defendant's use of force and the victim's submission to, or engagement in, the charged act of sexual contact.[11] The government need not prove that the force used by the defendant was so violent or so aggravated that the defendant physically overpowered or completely physically dominated the victim.[12] But the defendant's use of force must have been a substantial factor in causing the victim to submit to or engage in the charged act of sexual contact.[13]
Under Oregon law, this question - whether the defendant's use of force or threat of force caused the victim to submit to or engage in sexual contact that they otherwise would not have submitted to or engaged in - does not turn solely on the type or amount of physical force used or threatened by the defendant. It also turns on the relevant attendant circumstances - such things as the relationship between the defendant and the victim, their relative ages, the differences in their size or strength, and similar matters.[14]
Although the members of this Court do not necessarily endorse all the specifics of the Oregon court's approach to this matter, we agree that the question of coercion is a fact-intensive inquiry that turns on the totality of the circumstances.
Application of this law to the facts of Inga's case
As explained in Judge Allard's lead opinion, Inga's defense at trial was that he never touched L.P.'s breasts - that L.P. was lying about this aspect of the attack. Given this defense, the parties did not directly litigate the issue of whether Inga used force or threat of force to coerce L.P. into submitting to the sexual touching. Rather, the parties litigated whether a sexual touching had occurred at all.
Now, on appeal, Inga raises a different defense to the State's case: he contends that even if he touched L.P.'s breasts without her subjective consent, the State's evidence was insufficient to support a finding that this touching occurred "without consent" as defined in AS 11.41.470(8)(A) - in other words, insufficient to support a finding that L.P. was coerced by force or threat of force to submit or acquiesce to this touching.
Even though Inga did not raise this issue in the trial court, he may raise it on appeal, because our supreme court has held that the question of the sufficiency of the evidence to support a particular verdict is a question of law.[15]
But when a defendant challenges the sufficiency of the evidence to support a criminal conviction, we must view the evidence (and all reasonable inferences to be drawn from it) in the light most favorable to the verdict.[16] Viewed in this light, the evidence presented at Inga's trial supports a finding that his touching of L.P.'s breasts was "without consent".
Inga's primary argument is that his beating of L.P. did not occur until after he grabbed L.P.'s breasts and she pushed his hand away. According to Inga, this fact demonstrates that Inga's touching of L.P.'s breasts could not have been "without consent", *355 since Inga did not employ any greater force than was inherent in the act of touching itself - at least, not until after L.P. resisted the touching.
But as I explained earlier in this concurrence, the question of force must be resolved under the totality of the circumstances. Here, according to the State's evidence, Inga was alone with L.P. in the house when this incident occurred. The violence in the present case was precipitated when Inga propositioned L.P. to have sex with him, and she told him no. It was then that Inga grabbed L.P.'s breasts. L.P. pushed him away - and Inga immediately began beating her. During this beating, according to L.P.'s testimony, Inga was straddling her and trying to restrain her hands above her head.
Viewed in the light most favorable to the jury's verdict, Inga engaged in one continuing assault against L.P. - an assault that was motivated by a desire for sex. Inga initiated this assault immediately after L.P. rejected his verbal sexual advance. And this assault had overtly sexual components: first, Inga's forcible grabbing of L.P.'s breasts, and then Inga's act of straddling L.P. and restraining her hands above her head while he beat her.
If Inga had begun to beat L.P. before he grabbed her breasts, we would not be engaged in this debate as to whether that sexual touching was "without consent". But the same principle governs Inga's case, even though he did not beat L.P. until moments after he grabbed her breasts.
Inga committed a physical assault upon L.P. that included sexual contact. A reasonable jury could find that this sexual contact was "without consent" within the meaning of AS 11.41.470(8)(A) - i.e. , that the unwanted sexual touching was coerced by the use of force. I therefore conclude that the evidence was legally sufficient to support Inga's conviction for second-degree sexual assault.[17]

Rollin M. Perkins & Ronald N. Boyce, Criminal Law (Third Edition 1982), p. 210, quoting Blackstone's Commentaries on the Laws of England , Vol. 4, § 210.

See Wayne R. LaFave, Substantive Criminal Law (Third Edition 2017), §§ 17.3(a) through 17.3(d), Vol. 2, pp. 840-860.

See LaFave, § 17.3(d), Vol. 2, pp. 855-60.

Commentary to Tentative Draft 11.41.460(6), found in Alaska Criminal Code Revision Subcommission Tentative Draft , Vol. 1, pp. 74, 79-80.

See LaFave, § 17.3(a), Vol. 2, pp. 841-46.

See, e.g. , People v. Denbo , 372 Ill.App.3d 994, 311 Ill.Dec. 347, 868 N.E.2d 347, 355, 358 (2007) ; Scott-Gordon v. State , 579 N.E.2d 602, 603-04 (Ind. 1991) ; Chatham v. State , 845 N.E.2d 203, 207-08 (Ind. App. 2006) ; State v. Schenck , 513 So.2d 1159, 1163 (La. 1987) ; Johnson v. Commonwealth , 5 Va.App. 529, 365 S.E.2d 237, 240 (1988).

ORS § 163.415.

ORS § 163.427(1)(a)(B).

ORS § 163.305(1)(a)-(b).

Marshall , 253 P.3d at 1025.

Id. at 1023.

Id. at 1027.

Id. at 1024-27.

Id. at 1027.

See Shafer v. State , 456 P.2d 466, 467-68 (Alaska 1969) ; see also Marshall v. Peter , 377 P.3d 952, 956 (Alaska 2016).

See Iyapana v. State , 284 P.3d 841, 848-49 (Alaska App. 2012) ; Silvera v. State , 244 P.3d 1138, 1142 (Alaska App. 2010).

See Iyapana , 284 P.3d at 848-49 ; Silvera , 244 P.3d at 1142.