**STATE of Minnesota, Respondent,**

**v.**

**Josefina Sanchez MENDOZA, Appellant,**

**Veronica Soto Alvarez, Appellant.**

**Nos. C5–01–994, C9–01–996.**

Court of Appeals of Minnesota.

Jan. 31, 2002.

Mike Hatch, Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, MN; and Raymond F. Schmitz, Olmsted County Attorney, Government Center, Rochester, MN, for respondent.

John M. Stuart, State Public Defender, Sharon E. Jacks, Assistant Public Defender, Minneapolis, MN, for appellants.

Considered and decided by WILLIS, Presiding Judge, CRIPPEN, Judge, and ANDERSON, Judge.

## OPINION

WILLIS, Judge.

In consolidated appeals, appellants challenge their sentences for convictions of conspiracy to commit controlled-substance crime in the first degree. They argue that the district court's refusal to grant mitigated dispositional departures was improperly based on their alienage and national origin. We conclude that the district court did not sentence appellants on the basis of their national origin. But because the district court erred by considering their immigration status and possible deportation and therefore by not exercising its sentencing discretion, we reverse and remand for resentencing.

## FACTS

Appellants Josefina Sanchez Mendoza and Veronica Soto Alvarez, both Mexican nationals, were charged with multiple counts of first-degree controlled-substance crime, a violation of Minn.Stat. § 152.021 (2000), and one count of conspiracy to commit first-degree controlled-substance crime, a violation of Minn.Stat. § 152.096, subd. 1 (2000). They negotiated plea agreements with the state under which they pleaded guilty to the counts of con-

spiracy and were allowed to argue for mitigated sentencing departures.

The complaints alleged that between March 2 and July 6, 2000, appellants conspired with each other to possess or sell cocaine. In pleading guilty, Sanchez Mendoza admitted that she and Soto Alvarez agreed to hold cocaine for later sale by a third party; Soto Alvarez admitted that at Sanchez Mendoza's request, she received money for the cocaine on behalf of the third party. Both acknowledged that their convictions may affect their immigration status.

At the consolidated sentencing hearing, appellants moved for mitigated dispositional departures on the ground that they were amenable to probation; Soto Alvarez claimed the additional grounds of her young age, lack of criminal record and capacity for judgment, and minor role in the crime. The state argued that the record did not support mitigated departures and, alternatively, that because appellants would be deported if placed on probation, they were not amenable to probation.

The probation officer who prepared the presentence reports testified that (1) she had no basis for recommending mitigated dispositional departures; (2) the Immigration and Naturalization Service (INS) told her that it would begin deportation proceedings against appellants when they became available; (3) she could not supervise appellants' probation if they were deported; and (4) "if one isn't available for probation, being amenable is kind of a moot point."

The district court determined that

> [t]hese are cases that there are arguments both ways, and the complicating factor is obviously the INS situation, which makes the otherwise possible option of some kind of a local disposition really impossible and impractical[.]

and imposed 81–month prison sentences, which are within the presumptive-sentence range for appellants' offenses and criminal-history scores of zero. *See* Minn. Sent. Guidelines IV, V. This consolidated appeal follows.

## ISSUES

I. Did the district court err by basing its sentencing decision on appellants' alienage?

II. Did the district court err by basing its sentencing decision on appellants' national origin?

## ANALYSIS

A mitigated departure from a presumptive sentence under the sentencing guidelines may be imposed only if "substantial and compelling" circumstances are present. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). A decision to depart from the sentencing guidelines rests within the district court's broad discretion and will not be reversed absent an abuse of discretion. *State v. Givens*, 544 N.W.2d 774, 776 (Minn.1996). Only in a "rare case" will a reviewing court reverse a district court's imposition of a presumptive sentence. *Kindem*, 313 N.W.2d at 7.

### I.

Appellants argue that, although the district court recognized that substantial and compelling circumstances supported mitigated dispositional departures, it concluded that because they were subject to deportation, it could not order probation. They contend that because the district court would have departed from the presumptive sentence had they been United States citizens and thus not subject to deportation, the district court based its sentencing decision on their alienage. Sentencing a defendant on the basis of alienage is unconstitutional. *United States*

*v. Onwuemene,* 933 F.2d 650, 651 (8th Cir.1991).

Appellants' argument assumes that the district court recognized that substantial and compelling circumstances were present. It did not; it stated only that there were "arguments both ways." At best, this statement supports a claim that the district court acknowledged the existence of reasons both for and against departures. But the district court also stated that "the complicating factor is obviously the INS situation, which makes the otherwise possible option of some kind of a local disposition really impossible and impractical."

■ Thus, the question arises of whether the district court (1) made a considered decision to impose presumptive sentences or (2) merely acknowledged that there were reasons for and against departures but decided, because appellants would be deported if placed on probation, that it had no choice but to impose presumptive sentences. If the district court has discretion to depart from a presumptive sentence, it must exercise that discretion by deliberately considering circumstances for and against departure. *State v. Curtiss,* 353 N.W.2d 262, 264 (Minn.App.1984); *see State v. Spain,* 590 N.W.2d 85, 88 (Minn. 1999) (stating that a sentencing court has no discretion to depart from sentencing guidelines unless mitigating or aggravating factors are present).

This question, in turn, raises two issues. First, we must determine whether the district court's consideration of appellants' immigration status and possible deportation, as evinced by its reference to "the INS situation," was proper and, if so, whether that status precluded probation as a possible sentencing disposition. If the district court properly considered appellants' immigration status and correctly concluded that probation was precluded, the district court had no discretion to make mitigated dispositional departures and thus no discretion to exercise. Second, because the district court did not identify any circumstances supporting departure, we must determine whether such circumstances exist. If there are none, the district court had no discretion to depart from the presumptive sentence and thus no discretion to exercise. *Spain,* 590 N.W.2d at 88.

### A. Immigration Status

■ Although we find no published Minnesota case that discusses the effect of immigration status on sentencing, the supreme court has held that possible deportation is a collateral, not a direct, consequence of a guilty plea and therefore is not a ground for plea withdrawal. *Alanis v. State,* 583 N.W.2d 573, 578–79 (Minn.1998); *see Barragan v. State,* 583 N.W.2d 571, 572–73 (Minn.1998) (stating that deportation alone is not a manifest injustice requiring postconviction relief). Direct consequences are those that "flow definitely, immediately, and automatically from the guilty plea—the maximum sentence and any fine to be imposed." *Alanis,* 583 N.W.2d at 578. Deportation is not a direct consequence because it is not definite, immediate, or automatic; before deportation can occur, "the INS must exercise its discretion to commence deportation proceedings and, prior to deportation, there are various administrative procedures which must be followed." *Id.* at 578–79.

Examination of the discussion of deportation in *Alanis* and its progeny makes it clear that deportation is "collateral" because immigration consequences are not controlled by Minnesota courts. The INS may or may not decide to commence deportation proceedings, or to complete them if commenced, and may or may not act within a reasonable period of time. An order by a Minnesota district court that a

defendant be deported, or not be deported, could not direct the actions of the INS.

 This observation compels our conclusion that possible deportation because of immigration status is not a proper consideration in criminal sentencing. If the district court were to consider deportation as a factor in its sentencing decision, it would be considering a possible collateral consequence in arriving at an appropriate sentence for the defendant. We conclude that consideration of a possible collateral consequence, which is beyond the control of the district court and which may or may not occur, is not a valid consideration in deciding whether to impose a presumptive sentence or to depart from the guidelines. If possible deportation is considered a reason not to depart and the district court imposes a presumptive sentence as a result, the sentence may not be appropriate because it cannot be known with certainty whether deportation would have occurred.

 We conclude, therefore, that the district court erred by considering appellants' immigration status and possible deportation. This error, however, does not require reversal unless circumstances exist that would support a departure.

### B. Circumstances Supporting Departure

 The record shows that legitimate reasons for departure exist. Sanchez Mendoza was 23 years old during the time covered by the offense and had no prior criminal record. The probation officer testified that while Sanchez Mendoza was in jail, she gained insight into her chemical abuse, appeared determined to abstain from chemical use, and took classes to advance her education. Soto Alvarez was 19 years old at the beginning of the offense and had no prior criminal record. Medical reports indicate that she suffered from depression, which she claimed affect-

ed her capacity for judgment, and the probation officer testified that while Soto Alvarez was in jail, she made progress with her mental health.

We note that the record also shows that reasons for imposing presumptive sentences exist. Appellants conspired to possess or sell cocaine over at least four months, and the weight of cocaine sold in three transactions during that time exceeded 498 grams, nearly 50 times the weight necessary for a conviction of first-degree sale of a controlled substance. *See* Minn.Stat. § 152.021, subd. 1(1) (2000) (requiring minimum of 10 grams of cocaine for first-degree controlled-substance crime).

Because we cannot conclude from the record that the district court made a deliberate decision to impose presumptive sentences by weighing reasons for and against departure, we remand for the district court to sentence appellants without considering their immigration status and possible deportation and without assuming that they will be unavailable for probation because they will be deported. This is not that "rare" case in which we interfere with the district court's exercise of its discretion, but one in which, we conclude, that such an exercise of discretion may not have occurred. *See Curtiss*, 353 N.W.2d at 264 (stating that consideration of circumstances is "central to the scheme of the sentencing guidelines" and avoids sentencing that is "either mechanical or callous"). We express no opinion on whether mitigated dispositional departures are appropriate.

## II.

 Appellants contend that the district court's statements during the sentencing hearing indicate that it based its refusal to depart on their national origin.

Sentencing a defendant on the basis of national origin is unconstitutional. *Onwuemene*, 933 F.2d at 651. Appellants refer to an exchange between the district court and Sanchez Mendoza's counsel:

THE COURT: Well, here's the twist, as I see it, that I wanted to pose to you. Ordinarily, of course, being placed on probation involves some higher measure of freedom than the institution, and I suppose even being in Mexico would imply a certain amount of that with respect to your client. But it strikes me that there was probably a real good reason why she wanted to leave Mexico, and it strikes me further that she's clearly not going to get any medical, dental, psychiatric care in Mexico. I suspect they provide none of that for people without money there, not too unlike most places here, but a totally uncertain future, no educational or vocational training or help. She'll have no job, so what she'll have is this illusory freedom, which brings to mind the old Janis Joplin song.

Isn't she better off in the facility in Shakopee where she's going to get all of the dental, medical, psychiatric care she needs? She's going to get room and board. She's going to get the opportunity to get the education that would make her, even when sent back to Mexico, a productive citizen there, theoretically; and all she's giving up is freedom, this illusory freedom that I'm not so sure she's going to have much of in Mexico anyway. What do you say?

[COUNSEL]: That's an interesting argument, Your Honor.

THE COURT: It's what occurred to me.

[COUNSEL]: What you're saying is Minnesota prison is better than living in Mexico.

THE COURT: That's what I'm saying. That's what I'm saying. I read

her background; and to me, Shakopee is a better place than where she came from. I mean, in Shakopee she's probably going to be safe. There aren't going to be any uncles with submachine guns gunning down people in her presence. I'm not sure whether that was your client or [other counsel's] but—

[COUNSEL]: That was my client.

THE COURT: There's not going to be any of that kind of stuff. She apparently got the scar on her foot where she was shot in the foot by some knucklehead. She's not going to face that in Shakopee, presumably. I mean, she's going to be safer here than she's going to be in Mexico. I would think, in a way, you might be looking at this. Are you sure you've talked to her? Are you sure she doesn't prefer to go to Shakopee? This four and a half years does involve a time where she could get an education.

[COUNSEL]: Your Honor, have you ever lived in Mexico?

THE COURT: No, I haven't, and I don't wish to; and the part that Americans go to are that thin little two blocks next to the beach. They don't go inland three and four blocks where these people lived.

[COUNSEL]: She would prefer to go back to Mexico rather than prison * * *.

Although some of the district court's remarks about Mexico may have been inappropriate, the record shows that the district court was primarily concerned about returning Sanchez Mendoza to what it considered to be an unsafe environment, which happened to be in Mexico. The district court reviewed the presentence report on Sanchez Mendoza's background, which includes physical abuse by her father, murders of several family members by other family members, and an uncle

who shot two persons with a machine gun in her presence and shot her in the foot. These incidents occurred in Mexico. We are not persuaded, after thoroughly reviewing the sentencing transcript, that the district court sentenced appellants to prison simply because they are Mexicans.

## DECISION

The district court did not sentence appellants on the basis of their national origin but erred by considering appellants' immigration status and possible deportation and therefore by not exercising its sentencing discretion. We reverse and remand for resentencing.

**Reversed and remanded.**

CRIPPEN, Judge (dissenting).

Action on a guilty plea may be just even though it is proven that the defendant was not informed about collateral consequences of a conviction. *Alanis v. State,* 583 N.W.2d 573, 578–79 (Minn.1998). But it is quite another thing to suggest that collateral consequences of conviction must be ignored by counsel, the parties, or the court-or more specifically, that the trial court may not consider collateral consequences of a conviction in determining whether to make a downward dispositional departure. If there were authority for the latter conclusion, I would agree with the rationale carefully enunciated by the majority. There being no such authority, I respectfully dissent from the decision to reverse.