**STATE of Alaska, Appellant/Cross–Appellee,**

v.

**Michael SILVERA, Appellee/Cross–Appellant.**

**State of Alaska, Petitioner,**

v.

**Jose Manuel Perez, Respondent.**

**Nos. A–11174, A–11193, A–11195.**

Court of Appeals of Alaska.

Sept. 27, 2013.

**35.** *Davis v. United States,* —— U.S. ——, 131 S.Ct. 2419, 2431, 180 L.Ed.2d 285 (2011).

**36.** *Id.,* 131 S.Ct. 2419.

**37.** *Id.,* 131 S.Ct. at 2428–29.

**38.** *Id.*

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellants Silvera and Perez.

Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and COATS, Senior Judge.[1]

## OPINION

ALLARD, Judge.

This consolidated case raises the question of whether the statewide three-judge sentencing panel has the authority to impose a sentence below the presumptive range to lessen, or eliminate, the risk that a defendant will be deported.

The State argues that federal law prohibits state courts from modifying a sentence for the purpose of influencing the federal immigration consequences of a conviction. It also argues that the Alaska Statutes do not authorize the three-judge panel to impose a sentence below the presumptive range based on the collateral consequences of deportation. Lastly, it argues that adjusting a sentence to lessen the risk of deportation violates the equal protection clause, because the non-citizen offender may receive a more lenient sentence than a citizen would based on the same conduct.

For the reasons explained below, we conclude that the three-judge panel has authority to impose a sentence below the presumptive range based on the harsh collateral consequences of deportation and that this authority is not preempted by federal law.

With respect to Michael Silvera, the three-judge panel has already concluded that Silvera's potential deportation was a "harsh collateral consequence" that qualified as a non-statutory mitigating factor and has already imposed a sentence below the presumptive range. We therefore affirm Silvera's sentence.

With respect to Jose Manuel Perez, the three-judge panel did not directly decide whether deportation would qualify as a harsh collateral consequence. Instead, the panel assumed that Perez had established this non-statutory mitigating factor and concluded that consideration of this factor would justify imposing a sentence below the presumptive range for one of Perez's convictions. We therefore remand Perez's case to the three-judge panel for further proceedings.

### Facts and proceedings

#### Michael Silvera

Michael Silvera has been a lawful resident of the United States since 1978. He served in the Armed Forces for more than six years and received an honorable discharge. In 2007, he was convicted of second-degree assault for assaulting a man with a knife during a drunken incident in a taxicab in Nome.[2] As a first felony offender, Silvera faced a presumptive range of 1 to 3 years for that offense.[3] Because his conviction was for a crime of violence, he also faced deportation as an "aggravated felon" if he was sentenced to 1 year or more.[4]

---

1. Sitting by assignment made pursuant to article IV, section 11 of the Alaska Constitution and Administrative Rule 23(a).

2. *Silvera v. State*, 244 P.3d 1138, 1141–42 (Alaska App.2010).

3. AS 11.41.210(a), (b) (providing that second-degree assault is a class B felony); AS 12.55.125(d)(1) (setting the presumptive range for a first felony offender convicted of a class B felony at 1–3 years).

4. 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony" to include a crime of violence if a sentence of 1 year or more is imposed); 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that a non-citizen convicted of an aggravated felony after admission is deportable).

Silvera asked his sentencing judge to refer his case to the three-judge sentencing panel for consideration of the non-statutory mitigating factor of "harsh collateral consequences."[5] Silvera asserted that he had a serious medical condition for which he received regular treatment from the Veterans Administration and that he would lose those benefits if he were deported.[6] The sentencing judge ultimately ruled that it would be manifestly unjust not to consider the non-statutory mitigating factor of "harsh collateral consequences," and he referred Silvera's case to the three-judge panel.

The three-judge panel concluded that "harsh collateral consequences" is an appropriate non-statutory mitigating factor. It then found that Silvera had established that factor by showing: (1) that he was at substantial risk of deportation to Jamaica if he received a sentence of 1 year or more; (2) that he would lose his medical benefits if he were deported; and (3) that he would not be able to afford the medical care he needed, even assuming it was available in Jamaica, because his illness had prevented him from working. The panel also found that Silvera was not at high risk of reoffending. Based on these findings, the panel concluded that a sentence within the presumptive range would be manifestly unjust. It therefore imposed a sentence that would not subject Silvera to deportation as an aggravated felon: a sentence of 364 days to serve.

*Jose Perez*

In 2011, Jose Perez was convicted of fourth-degree assault[7] and interference with official proceedings[8] for assaulting a police informant who was a witness against him in a drug case while he and the informant were incarcerated. Perez entered a plea to the underlying drug charge (fourth-degree misconduct involving a controlled substance for possessing heroin).[9]

At the time of sentencing, Perez had been a lawful permanent resident of the United States for twenty-six years, since he was ten years old. As a first felony offender, he faced a presumptive term of 1 to 3 years for the interference with official proceedings conviction[10] and 0 to 2 years for the controlled substance conviction.[11] He also faced a sentence of up to 1 year for fourth-degree assault and imposition of up to 437 days of suspended time for revocation of his probation in another misdemeanor case.

Like Silvera, Perez asked the sentencing court to refer his case to the three-judge sentencing panel for consideration of the proposed non-statutory mitigator of "harsh collateral consequences." The consequence Perez faced was deportation as an aggravated felon if he received a sentence of 1 year or more for his interference with official proceedings conviction.[12] (Perez also faced deportation based on his drug offense, but because that offense was not an aggravated felony under federal law, he could apply for discretionary relief from deportation based on that conviction.[13]) Perez claimed this consequence was unduly harsh given that he had left the Dominican Republic at a young age and had no real ties there.

5. *Silvera*, 244 P.3d at 1149.

6. *Id.* at 1150.

7. AS 11.41.230(a).

8. AS 11.56.510(a)(1)(A).

9. AS 11.71.040(a)(3)(A).

10. AS 11.56.510(b) (providing that interference with official proceedings is a class B felony); AS 12.55.125(d)(1) (setting the presumptive range for a first felony offender convicted of a class B felony at 1–3 years).

11. AS 11.71.040(d) (providing that fourth-degree controlled substance misconduct is a class C felony); AS 12.55.125(e)(1) (setting the presumptive range for a first felony offender convicted of a class C felony at 0–2 years).

12. 8 U.S.C. § 1101(a)(43)(S) (defining "aggravated felony" to include an offense relating to obstruction of justice for which the term of imprisonment is at least 1 year); 8 U.S.C. § 1227(a)(2)(A)(iii) (providing that a non-citizen convicted of an aggravated felony after admission is deportable).

13. 8 U.S.C. § 1227(a)(2)(B)(i) (providing that non-citizens convicted of drug offenses are deportable); 8 U.S.C. § 1229b(a)(3) (providing that certain long-time residents may apply for cancellation of removal, unless they have been convicted of an aggravated felony).

The sentencing judge concluded that if he was not otherwise bound by the presumptive range of 1–3 years for Perez's interference with official proceedings conviction, he might consider structuring Perez's composite sentence to lessen the risk that Perez would be deported. The judge therefore referred the case to the three-judge panel for consideration of the non-statutory mitigating factor of "harsh collateral consequences." The judge recommended that the panel impose a sentence of 364 days for the interference with official proceedings conviction and a total composite sentence of 3 years and 71 days.

The three-judge panel found, as a factual matter, that Perez would be deported if he received a sentence of 1 year or more for his interference with official proceedings conviction. The panel assumed, without deciding, that deportation would be a harsh collateral consequence in Perez's case.[14] It then adopted the sentencing judge's recommended sentence, concluding that it would be manifestly unjust to subject Perez to inevitable deportation when it was possible to construct a composite sentence that fully satisfied the *Chaney*[15] criteria but still allowed Perez to apply for relief from deportation.[16]

*Alaska courts are not prohibited by federal law from imposing a sentence aimed at influencing the defendant's risk of deportation*

The State argues that federal law preempts state sentencing law and that, because the federal government has exclusive authority over deportation decisions, the three-judge sentencing panel is prohibited from modifying a sentence for the purpose of influencing the defendant's risk of deportation.

■ The law of federal preemption is derived from the Supremacy Clause of Article VI of the United States Constitution, which declares that federal law shall be "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The Alaska Supreme Court generally applies a two-step analysis to preemption questions:

> First, we look to see whether Congress has overtly preempted the subject matter the state wishes to regulate, either explicitly, by declaring its intent to preempt all state authority, or implicitly, by occupying the entire field of regulation on the subject in question. Second, if neither kind of direct preemption is found, we look to whether federal and state law conflict in this particular instance.[17]

■ In this analysis, courts must assume that the historic police powers of the states are not superseded "unless that was the clear and manifest purpose of Congress."[18]

■ The State does not assert that Congress has enacted a statute expressly forbidding state courts from considering deportation consequences at sentencing. Instead, it argues that Congress's regulation of immigration is so pervasive that it establishes Congress's intent to displace any state action aimed at influencing who will be deported.

The flaw in the State's argument is that Congress expressly reserved a role for state courts in determining when a crime is an "aggravated felony" under federal law. Under the Immigration and Nationality Act,[19]

**14.** The panel concluded that it was not required to reach this issue, based on its reading of an order issued by this Court.

**15.** *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

**16.** The three-judge panel did not impose this sentence. In response to a petition for review filed by the State, this Court had ordered the three-judge panel to decide on an appropriate sentence but to not impose the sentence to avoid any potential double jeopardy issues if the State prevailed on the claims raised in its petition for review. Court of Appeals Order, File No. A–11195 (March 9, 2012).

**17.** *Tlingit–Haida Reg'l Elec. Auth. v. State*, 15 P.3d 754, 766 (Alaska 2001) (footnote omitted).

**18.** *Arizona v. United States*, —— U.S. ——, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

**19.** *See* Pub.L. No. 104–208 (Illegal Immigration Reform and Immigrant Responsibility Act of 1996); 8 U.S.C. § 1101 et seq. (Immigration and Nationality Act).

some crimes—including murder, rape, and drug trafficking—are aggravated felonies no matter what sentence is imposed.[20] Other crimes are aggravated felonies based on the maximum sentence that *may* be imposed.[21] But the offenses at issue in this case—crimes of violence and obstruction of justice—only become aggravated felonies if a court actually *imposes* a sentence of 1 year or more.[22] We therefore infer that for these offenses, Congress expected that state courts would have a role in determining who qualified as an aggravated felon.[23]

The State argues that Congress did not intend these state sentencing decisions to be motivated by a desire to influence the defendant's risk of deportation. To support this argument, the State observes that Congress in 1990 eliminated judicial authority to make binding recommendations against deportation in criminal cases.

Beginning in 1917, when Congress first authorized deportation based on certain criminal convictions, sentencing judges had the authority to make a "judicial recommendation against deportation," known as a JRAD, for non-citizens convicted of crimes of moral turpitude, and this recommendation had the effect of binding the executive branch to disregard the conviction as a basis for deportation.[24] Congress first circumscribed that procedure in 1952, and then completely eliminated it in 1990.[25]

But as the defendants point out, Congress did away with this judicial authority as part of a broader effort to streamline the deportation of non-citizens convicted of criminal offenses. The same 1990 legislation that eliminated the JRAD procedure also limited the Attorney General's authority to grant discretionary relief from deportation to defendants convicted of aggravated felonies.[26] And in 1996, Congress eliminated the Attorney General's statutory authority to grant this relief to aggravated felons,[27] leaving the Attorney General with only "limited remnants of equitable discretion." [28]

Even accepting that Congress intended to preempt state courts from issuing binding decisions on deportation in criminal cases, that does not mean Congress intended to prohibit state courts from considering the risk of deportation in deciding whether to impose a term of imprisonment that would lead to the defendant's classification as an aggravated felon. As already explained, Congress expressly reserved a role for state courts in determining when a defendant has committed an aggravated felony for purposes of federal immigration law; it reserved no such role for state courts in deciding whether a criminal defendant should be deported. For this reason, courts have consistently ruled that the federal government's exclusive power over the administration and enforcement of immigration laws deprives criminal courts of the authority to order a defendant to leave the United States or to require a defendant to leave or remain outside the United States as a condition of probation.[29]

**20.** 8 U.S.C. § 1101(a)(43)(A)-(C), (E), (H), (I), (K), (L), (N), (O).

**21.** 8 U.S.C. § 1101(a)(43)(J), (Q), (T). With respect to the offense of failure to appear, characterization as an aggravated felony hinges on the length of the sentence that may be imposed for the underlying offense. 8 U.S.C. § 1101(a)(43)(Q), (T).

**22.** 8 U.S.C. § 1101(a)(43)(F), (S); 8 U.S.C. § 1101(a)(48)(B).

**23.** Courts are constrained, of course, by the penalty ranges established by the legislature. But in any event, with respect to these crimes, it is state action—action by the state legislature or the state court—that determines whether a defendant is convicted of an aggravated felony under federal law.

**24.** *Padilla v. Kentucky*, 559 U.S. 356, 361–62, 130 S.Ct. 1473, 1479 & n. 3, 176 L.Ed.2d 284 (2010) (citing former 8 U.S.C. § 1251(b)).

**25.** *Id.*, 559 U.S. at 363, 130 S.Ct. at 1480.

**26.** *State v. Gaitan*, 209 N.J. 339, 37 A.3d 1089, 1101 (2012).

**27.** *Padilla*, 559 U.S. at 363, 130 S.Ct. at 1480; *Gaitan*, 209 N.J. 339, 37 A.3d at 1101.

**28.** *Padilla*, 559 U.S. at 364, 130 S.Ct. at 1480.

**29.** *See, e.g., People v. Antonio–Antimo*, 29 P.3d 298, 302–03 (Colo.2000); *Torros v. State*, 415 So.2d 908, 908 (Fla.Dist.Ct.App.1982) (per curiam); *Sanchez v. State*, 234 Ga.App. 809, 508 S.E.2d 185, 187 (1998); *Rojas v. State*, 52 Md. App. 440, 450 A.2d 490, 492 (1982); *State v.*

By contrast, state courts have asserted their authority to adjust a defendant's sentence to lessen the risk that the defendant will be deported.[30] Moreover, the state courts that have directly considered the issue have rejected the claim that federal law prohibits state courts from modifying a defendant's sentence to avoid an aggravated felony conviction.[31]

We acknowledge that two federal circuits have held that Congress intended to prohibit federal courts from granting a downward adjustment in the federal sentencing guidelines to lessen the likelihood of deportation.[32] But we do not find those decisions persuasive here. We note that Congress has given exclusive authority to the United States Sentencing Commission to decide what factors can never be the basis for a downward departure from the federal sentencing guidelines,[33] and that the Sentencing Commission has not acted to make deportation a forbidden, or even a discouraged, sentencing factor.[34]

■ The State claims that the sentencing hearings conducted by the three-judge panel in Silvera's and Perez's cases were *de facto* immigration hearings. This claim is not supported by the record. In both cases, the three-judge panel addressed state sentencing considerations, and they did not purport, as the State argues, to substitute their judgment for that of federal immigration officials based on "myriad humanitarian, political, and national security factors." It may be that federal immigration officials weigh some of the same factors in deportation proceedings that state courts traditionally consider at sentencing, but this potential overlap does not establish Congress's clear and manifest purpose to prohibit state courts from considering the totality of legally relevant circumstances at sentencing—including the risk and consequences of deportation.

■ The State also argues that the decisions of the three-judge panel provided Silvera and Perez with an exemption from deportation that Congress expressly proscribed. Specifically, the State points to 8 U.S.C. § 1229(b), which bars the Attorney General from cancelling the deportation of a non-citizen who has been convicted of an aggravated felony.[35] But Silvera and Perez have not been convicted of aggravated felonies; therefore, this provision does not bar them from any remedies available to them under the Immigration and Nationality Act.

For these reasons, we reject the State's claim that federal law prohibits the three-judge sentencing panel from considering the harsh collateral consequences of deportation and, if manifest injustice would otherwise result, from imposing a sentence below the presumptive range based on that consideration.

*The three-judge panel did not act outside its authority by considering the non-statutory mitigating factor of "harsh collateral consequences"*

■ The Alaska Legislature's goal in enacting presumptive sentencing was to re-

---

*Pando,* 122 N.M. 167, 921 P.2d 1285, 1286–88 (N.M.App.1996); *Gutierrez v. State,* 380 S.W.3d 167, 173 (Tex.Crim.App.2012); *see generally* David E. Rigney, Annotation, *Propriety, in criminal case, of federal district court order restricting defendant's right to reenter or stay in United States,* 94 A.L.R. Fed. 619 (1989 & Supp.).

**30.** *See State v. Lewis,* 797 A.2d 1198, 1199, 1202–03 (Del.2002); *State v. Tinoco–Perez,* 145 Idaho 400, 179 P.3d 363 (App.2008); *State v. Quintero Morelos,* 133 Wash.App. 591, 137 P.3d 114, 116–18 (2006); *State v. Svay,* 828 A.2d 790, 794–95 (Me.2003); *Commonwealth v. Gevorgiyan,* No.2003–CA–002743–MR, 2005 WL 1125194, at *1–2 (Ky.App. May 13, 2005); *Commonwealth v. Gomes,* unpublished, No. CA 971653, 1999 WL 1705908 at *1–2 (Mass.Super. Oct. 14, 1999). *But see State v. Mendoza,* 638 N.W.2d 480, 483–

84 (Minn.App.2002) (ruling that deportation is never a proper sentencing consideration because it is too uncertain).

**31.** *Lewis,* 797 A.2d at 1202; *Quintero Morelos,* 137 P.3d at 119.

**32.** *United States v. Maung,* 320 F.3d 1305, 1309 (11th Cir.2003); *United States v. Aleskerova,* 300 F.3d 286, 301 (2nd Cir.2002).

**33.** *Koon v. United States,* 518 U.S. 81, 106–07, 116 S.Ct. 2035, 2050–51, 135 L.Ed.2d 392 (1996).

**34.** *See United States v. Martinez–Carillo,* 250 F.3d 1101, 1107 (7th Cir.2001).

**35.** 8 U.S.C. § 1229b(a)(3).

duce disparity in criminal sentencing, and it gave sentencing courts no authority to impose a sentence below the presumptive range unless the defendant established at least one of the mitigating factors listed in AS 12.55.155(d).[36] To avoid manifest injustice in cases in which these mitigating factors did not apply, the legislature created the "safety valve" of the three-judge sentencing panel.[37] If a sentencing judge finds that manifest injustice will result from the failure to consider a mitigating factor *not* listed in AS 12.55.155(d), that judge by statute must refer the case to the three-judge panel.[38] The three-judge panel then independently reviews whether the defendant has established the non-statutory mitigating factor by clear and convincing evidence.[39] If the panel concludes that the mitigating factor is proved, and that it would be manifestly unjust to fail to adjust the presumptive range based on that factor, it must "assess the proper sentence, applying the *Chaney* sentencing criteria and taking the mitigating factor into consideration." [40]

■ The State argues that this statutory scheme does not permit the three-judge panel to impose a sentence below the presumptive range based on the harsh collateral consequences of deportation. It argues that mitigating a sentence to lessen the risk that a defendant will be deported defeats the legislative goal of promoting uniformity in sentencing [41] and does not support the sentencing goals elucidated in *State v. Chaney*,[42] AS 12.55.005,[43] or article I, section 12 of the Alaska Constitution.[44] The State also asserts that, as a matter of law, a federal deportation decision can never be "manifestly unjust."

The Alaska Supreme Court and this Court have previously recognized that the harsh collateral consequences of a criminal conviction, including deportation, are appropriate sentencing considerations.[45] The State argues that this precedent is limited to circumstances in which the defendant's deportation is "nearly certain," [46] and that it does not apply when deportation is a "mere possibility." We have no reason to decide in this case whether the "mere possibility" of deportation is a proper sentencing consideration. The three-judge panel found that Silvera was at "substantial risk" of deportation and that deportation was a certainty in Perez's case. The State has not challenged these findings, and we therefore treat these findings as true.

■ The State argues that a judicial finding that a defendant faces deportation will *always* be impermissibly speculative, because immigration officials have broad discretion in deciding whether to initiate deportation proceedings. To support this argument, the State relies on *State v. Mendoza*,[47] a Minnesota Court of Appeals case holding that the prospect of deportation is always too uncertain to be a proper consideration at sentencing.[48]

As a preliminary matter, we do not agree that the State has established that immigration officials have broad discretion to decide whether to deport aggravated felons. A poli-

---

**36.** *See Nell v. State*, 642 P.2d 1361, 1369–70 (Alaska App.1982); AS 12.55.005.

**37.** *See State v. Wagner*, 835 P.2d 454, 455–56 (Alaska App.1992); *Griffith v. State*, 653 P.2d 1057, 1058 (Alaska App.1982); AS 12.55.165–175.

**38.** AS 12.55.165(a).

**39.** *Garner v. State*, 266 P.3d 1045, 1047–48 (Alaska App.2011) (citing AS 12.55.175(b)).

**40.** *Garner*, 266 P.3d at 1048.

**41.** Ch. 2, § 1, SLA 2005.

**42.** 477 P.2d 441 (Alaska 1970).

**43.** AS 12.55.005 codifies the *Chaney* criteria.

**44.** Alaska Const. art. I, § 12 requires that criminal administration be based on "the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation."

**45.** *Dale v. State*, 626 P.2d 1062, 1064 & n. 4 (Alaska 1980); *State v. Tucker*, 581 P.2d 223, 226 & n. 5 (Alaska 1978); *Chaney*, 477 P.2d at 446 n. 22; *Silvera*, 244 P.3d at 1150.

**46.** *Dale*, 626 P.2d at 1063.

**47.** 638 N.W.2d 480.

**48.** *Id*. at 483–84.

cy memorandum issued by U.S. Immigration and Customs Enforcement, which is part of the record in this case, indicates that the agency treats aggravated felons as "priority 1" for deportation. And the United States Supreme Court has declared that, under current law, deportation is "practically inevitable" for non-citizens who commit deportable offenses.[49]

We have no doubt that deportation will be speculative in some cases—but it will be practically certain in others. For this reason, even if we were not bound by the decisions of our supreme court holding that deportation is a proper consideration at sentencing, we would not be persuaded by the reasoning of the Minnesota Court of Appeals.[50] We note that courts regularly consider the prospect that a defendant will be deported in deciding whether to impose probation or certain conditions of probation.[51]

■■■ The State next argues that considering the harsh collateral consequences of deportation is inconsistent with the *Chaney* goals of rehabilitation, general and specific deterrence, affirmation of societal norms, and public safety, and also does not advance the interests of crime victims, because these goals are "not impaired by enforcing properly promulgated federal law." This argument frames the analysis too narrowly; the question is whether consideration of potential deportation consequences will, in appropriate cases, lead to a sentence that better advances

the *Chaney* sentencing goals. Alaska courts have already answered that question in the affirmative.[52]

■■■ The State contends that allowing courts to adjust a sentence to avoid the risk of deportation contravenes the legislative goal of uniformity in sentencing. This argument finds some support in our observation in our earlier decision in *Silvera* that a non-citizen who is sentenced to a term below the presumptive range because of the prospect of deportation may, in some instances, receive a more lenient sentence than an identical citizen who is not subject to deportation.[53] But the alternative—declining to impose a sentence below the presumptive range based on this non-statutory mitigating factor—also has the potential to defeat uniformity in sentencing, because a non-citizen facing deportation may be subject to much harsher overall consequences than a citizen convicted of the same offense.

The State argues that, because of the procedural fairness and prosecutorial discretion built into the federal immigration system, it can never be manifestly unjust to refrain from mitigating a sentence to lessen the risk of deportation. But this argument ignores the statutory context in which an Alaska court's finding of manifest injustice is made. The question before Alaska courts is not whether it would be manifestly unjust for the federal government to deport a defendant; the mandate of Alaska sentencing courts is to determine whether a sentence within the

---

**49.** *Padilla*, 559 U.S. at 364, 130 S.Ct. at 1480; *see also United States v. Couto*, 311 F.3d 179, 189–90 (2d Cir.2002), *abrogated on other grounds by Padilla*, 559 U.S. 356, 130 S.Ct. 1473 (noting that under the 1996 amendments "an alien convicted of an aggravated felony is automatically subject to removal and no one—not the judge, the INS, nor even the United States Attorney General—has any discretion to stop the deportation").

**50.** Even the Minnesota Supreme Court has not signed on to the Minnesota Court of Appeals' "broad assertion that 'possible deportation because of immigration status is not a proper consideration in criminal sentencing,' " leaving resolution of that question "for another day." *State v. Kebaso*, 713 N.W.2d 317, 324 n. 7 (Minn. 2006).

**51.** *See, e.g., People v. Espinoza*, 107 Cal.App.4th 1069, 132 Cal.Rptr.2d 670, 673 (2003); *People v.*

*Hernandez–Clavel*, 186 P.3d 96, 99 (Colo.App. 2008) (citing *People v. Sanchez*, 190 Cal.App.3d 224, 235 Cal.Rptr. 264, 267 (1987)); *Yemson v. United States*, 764 A.2d 816, 819 (D.C.2001); *State v. Martinez*, 38 Kan.App.2d 324, 165 P.3d 1050, 1055–57 (2007). *But see Mendoza*, 638 N.W.2d at 484.

**52.** *Dale*, 626 P.2d at 1064 & n. 4.; *Tucker*, 581 P.2d at 226 & n. 5; *Silvera*, 244 P.3d at 1150.

**53.** *Silvera*, 244 P.3d at 1150; *see also Burleson v. State*, 543 P.2d 1195, 1202 (Alaska 1975) ("Sentencing is an individualized process, and all persons committing the same crime should not necessarily receive like sentences. Yet, theoretically, if two persons of identical background commit the same offense, they should receive like punishment.").

presumptive range would be manifestly unjust in light of the *Chaney* criteria and the totality of legally relevant circumstances, including the non-statutory mitigating factor of "harsh collateral consequences." [54] Federal immigration officials are not motivated or constrained by these same considerations in deciding whether to deport a non-citizen. Therefore, even if the federal government's decision to deport a defendant is just in light of its statutory mandate and priorities, a sentence that does not take account of the risk of deportation might still be manifestly unjust under Alaska law.

We conclude that the three-judge panel has the statutory authority to impose a sentence below the presumptive range based on the harsh collateral consequences of deportation. If the three-judge panel were precluded from considering this factor as a matter of law, there is a substantial risk that unduly harsh sentences would be imposed on non-citizens in particular cases, defeating the legislature's goal of uniformity in sentencing. [55]

*Considering deportation consequences does not violate the equal protection clause*

 The State next argues that adjusting a sentence purely to avoid the immigration consequences of a conviction violates the federal and state equal protection clauses, because a non-citizen defendant in these circumstances might receive a more lenient sentence than would be imposed on a citizen defendant. This claim was not raised below, and the three-judge panel did not rule on it, so we review it for plain error. [56]

The State's argument rests on the premise that Silvera and Perez received favorable treatment based on their status as non-citizens. [57] But as already explained, it was the harsh collateral consequences they faced if they were deported, not their status as non-citizens, that led the three-judge panel to conclude that sentencing the defendants within the presumptive range would be manifestly unjust in these cases.

Moreover, to establish an equal protection violation, a party must show that the persons being compared are similarly situated. [58] Defendants who face harsh collateral consequences as a result of deportation are not similarly situated to defendants who do not face these harsh consequences. In imposing a sentence that satisfies the *Chaney* criteria, a sentencing court must take the totality of legally relevant circumstances into account, including the risk of deportation. As noted earlier, the failure to account for these types of differences could result in a sentence that is unduly harsh and therefore not proportionate to sentences imposed on other defendants.

Permitting sentencing courts to consider immigration consequences will not invariably result in more lenient sentences for non-citizens. In some cases, sentencing courts may determine that the defendant's risk of deportation does not establish a non-statutory mitigating factor and that referral to the three-judge panel is not warranted. In other cases, the three-judge panel may reject the sentencing court's finding of a non-statutory mitigating factor, or it may conclude that, even though the factor was established, it would not be manifestly unjust to sentence the defendant within the presumptive range.

Even in cases where the three-judge panel departs from the presumptive sentencing range based on the harsh collateral consequences of deportation, the result will not necessarily be a sentence that is more lenient than the sentence that would be imposed on a citizen. In Perez's case, for example, the three-judge panel ultimately proposed a composite sentence that was no different than

**54.** *See Campbell v. State*, 594 P.2d 65, 67 n. 5 (Alaska 1979); *Juneby v. State*, 665 P.2d 30, 37 (Alaska App.1983).

**55.** *See Smith v. State*, 711 P.2d 561, 570–71 (Alaska App.1985).

**56.** *See Bobby v. State*, 950 P.2d 135, 139 (Alaska App.1997).

**57.** *See Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (applying strict scrutiny to classifications based on alienage).

**58.** *Brandon v. Corrections Corp. of America*, 28 P.3d 269, 275 (Alaska 2001) (noting that the federal and state equal protection clauses "require equal treatment only for those who are similarly situated") (citation omitted).

what Perez would have received if he did not face deportation.

We acknowledge that there may be some cases, such as Silvera's, where the sentence imposed by the three-judge panel is more lenient than the sentencing judge would have imposed if the defendant did not face deportation. But even then, the critical question for purposes of equal protection analysis is whether the sentence complies with the *Chaney* criteria. Notably, the State has not challenged Silvera's sentence as clearly mistaken.[59]

We conclude that the State's generalized equal protection concerns are without merit and that its concerns about overly lenient sentences in particular cases are most appropriately addressed in those individual cases through the existing legal framework of the *Chaney* criteria and Alaska sentencing law.

*Conclusion*

Silvera's sentence is AFFIRMED. Perez's case is REMANDED to the three-judge panel for a determination of (1) whether deportation is a harsh collateral consequence qualifying as a non-statutory mitigating factor in his case and, if so, (2) whether a sentence within the presumptive range would be manifestly unjust given that harsh collateral consequence and the *Chaney* criteria. We do not retain jurisdiction.

---

59. *See* Appellate Rule 215(a)(3) (providing the procedural mechanism by which the State can challenge a sentence as too lenient).