*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1834**

State of Minnesota,
Respondent,

vs.

Hope Marie Carlson,
Appellant.

**Filed April 27, 2015
Affirmed
Larkin, Judge**

Ramsey County District Court
File No. 62-CR-14-1402

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Laura Rosenthal, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**LARKIN**, Judge

Appellant challenges her sentence for felony theft, arguing that the district court erred by denying her request for a downward durational departure. Because the district court did not abuse its discretion by imposing the presumptive sentence under the Minnesota Sentencing Guidelines, we affirm.

## FACTS

Appellant Hope Marie Carlson pleaded guilty to felony theft. She admitted that she took more than $1,000 in jewelry from her boyfriend's mother without her permission and pawned it. She informed the district court that at the time of the offense, she was recovering from Guillain-Barré, "a disorder in which the body's immune system attacks part of the peripheral nervous system" and that the disorder "caused some behavioral changes." She recognized that her illness did not constitute a defense.

At the sentencing hearing, Carlson's defense counsel asked the district court to "depart by one day" and impose a gross-misdemeanor sentence. Defense counsel argued Carlson's disorder made her offense "less serious than the typical case" and recounted Carlson's recovery from Guillain-Barré:

> We talked . . . extensively[] about the fact that when Ms. Carlson was first diagnosed and she was first going through the treatment that she would often, she found herself basically paralyzed. That she found herself doing and acting in ways that were so far away from her typical behavior. One of the things that struck her was the relationship with her uncle and aunt. She, frankly, she took things from them too and they comforted her and came to her and said, "Look we

2

are concerned that you have had such a major behavioral shift. What is going on?"

Defense counsel also noted that Carlson was "waiting for a restitution order" and wanted "to make [the victims] whole and pay them back."

Carlson told the district court, "I agree with any sort of punishment. I just am very concerned about a felony. I did it, I deserve to be punished in some sort of fashion. I just am scared about my future." The district court asked Carlson why she thought Guillain-Barré contributed to her offense, stating that "it's an autoimmune problem that affects the whole body but not necessarily your mind." Carlson responded, "One of the side effects from the, seeing the psychologist and neurologist can be erratic behavior." The following exchange occurred:

> THE COURT: I think that's an excuse.
> DEFENDANT: Well.
> THE COURT: This went on over a period of time.
> DEFENDANT: This was a couple of months.
> THE COURT: You knew what you were doing.
> DEFENDANT: No, no I, I'm saying I know I knew what I did was wrong. Just the behavior itself. I didn't understand why I thought it was okay to do something like that.
> THE COURT: And you were drinking or smoking at the time?
> DEFENDANT: I was smoking pot.
> THE COURT: And you used the money for?
> DEFENDANT: Pot.
> THE COURT: I don't think that's erratic[.] I think that's intentional.
> DEFENDANT: I agree that I did it.
> THE COURT: I just don't like it when somebody uses an excuse because a disease caused them to do it because I'm familiar with that disease and that doesn't make sense to me.
> DEFENDANT: I'm not saying that was the reason for it I, it's just the behavior, I just never have been a thief.
> THE COURT: Over what period of time did this continue?

3

DEFENDANT: For about six months.

After a brief discussion about restitution, the district court accepted Carlson's guilty plea, adjudicated her guilty, stayed imposition of sentence, and placed her on probation for five years. The district court stated:

> The reason I cannot go along with what your attorney asks for is that it is only probation for a max of two years and I'm not sure if things went badly, if I find out perhaps that you were still having a problem with stealing, there's only the gross misdemeanor sentence and I want to make sure that we know what's happening and you're getting the help you need so I don't see you back.

Carlson appeals her sentence, challenging the district court's denial of her request for a downward departure.

## DECISION

A district court must order the presumptive sentence provided in the sentencing guidelines unless the case involves "substantial and compelling circumstances" to warrant a downward departure. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). Appellate courts "afford the trial court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation omitted). Only in a "rare" case will an appellate court reverse a sentencing court's refusal to depart. *Kindem*, 313 N.W.2d at 7. "[A]s long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination," this court will not interfere with the district court's decision to impose the presumptive sentence. *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted); *see State v. Witucki*, 420

N.W.2d 217, 223 (Minn. App. 1988) ("An appellate court will not generally review the trial court's exercise of its discretion in cases where the sentence imposed is within the presumptive range."), *review denied* (Minn. Apr. 15, 1988).

Carlson argues that the district court abused its discretion by denying her request for a gross-misdemeanor sentence instead of felony sentence, which was a request for a downward durational departure. *See State v. Bauerly*, 520 N.W.2d 760, 762 (Minn. App. 1994) (holding that a year-long sentence for an offense that called for a presumptive sentence of a year and a day was a durational departure), *review denied* (Minn. Oct. 27, 1994). "In justification of a departure from a presumptive sentence under the sentencing guidelines, offense-related factors support durational or dispositional departure but offender-related factors relate only to dispositional departure." *State v. Behl*, 573 N.W.2d 711, 712 (Minn. App. 1998), *review denied* (Minn. Mar. 19, 1998).

Carlson argues that there are mitigating factors warranting a departure. She cites *Bauerly*, in which this court affirmed the district court's grant of a one-day downward departure in a theft case because the defendant's "remorse and the significantly lower amount of property involved adequately support the minimal downward departure imposed." 520 N.W.2d at 763. Carlson notes that the amount of her theft was "in the bottom of the value range" and that she expressed remorse. Although *Bauerly* would have supported a decision to depart in this case, the district court was not required to depart based on the low value of the stolen property and Carlson's remorse. *See State v. Jackson*, 749 N.W.2d 353, 360 (Minn. 2008) (stating that if mitigating factors are shown, the district court may, but is not required to, depart).

Carlson also notes that during the proceedings she "was not in custody and did not engage in any thefts," "she used her time to volunteer as a medical assistant at a clinic so that she could maintain her skills," and "had not engaged in this behavior before—her criminal history score was zero." These circumstances are irrelevant because "offender-related factors do not support durational departures." *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). Moreover, lack of a felony record is not a proper ground for departure because it was already considered in determining the presumptive sentence. *Bauerly*, 520 N.W.2d at 762.

Carlson argues that, by ordering a stay of imposition, the district court implicitly "recognized this was not a typical case" and that Carlson "was not deserving of a felony conviction remaining on her record." Even if that is true, it does not follow that the district court abused its discretion by refusing to grant a downward departure because the requirements for granting a stay of imposition and a downward departure are not the same. Given Carlson's offense and criminal history, the presumptive sentence under the Minnesota Sentencing Guidelines was a stayed sentence of one year and one day. When the guidelines call for a stayed sentence, the district court may pronounce a stay of execution or a stay of imposition. Minn. Sent. Guidelines 3.A.1 (2012). Thus, the district court's decision to stay imposition of sentence did not require substantial and compelling circumstances, unlike a decision to grant a downward departure. In sum, the district court's determination that a stay of imposition was appropriate does not mean that a downward departure was warranted.

Carlson's remaining arguments focus on the reasons the district court gave for refusing to depart from the presumptive sentence. Carlson argues that the district court "should not have substituted what it posited as its own familiarity with [her] disease" for the effects as she described them. She also argues that the district court's "lack of sympathy and respect for [her] illness was unfair." Lastly, she argues that the district court's "speculative feeling that [she] might steal again after successfully completing a couple of years of probation" lacked any basis and that such an outcome was unlikely.

Although the district court must give reasons to support a departure, an explanation is not required when the court considers reasons for departure but imposes a presumptive sentence. *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985). Here, the district court explained its refusal to depart, and the district court's explanation shows that it considered the reasons for and against departure before imposing the presumptive sentence. There is no basis for this court to demand more from the district court in this case. *See State v. Mendoza*, 638 N.W.2d 480, 484 (Minn. App. 2002) (remanding "[b]ecause we cannot conclude from the record that the district court made a deliberate decision to impose presumptive sentences by weighing reasons for and against departure"), *review denied* (Minn. Apr. 16, 2002); *State v. Curtiss*, 353 N.W.2d 262, 264 (Minn. App. 1984) (remanding because the district court "erred in putting aside arguments for departure rather than considering them").

As to Carlson's argument that the district court erred by refusing to depart based on her medical condition, the district court reasonably questioned whether Carlson's disorder decreased the seriousness of her offense. "[T]o constitute a mitigating factor in

7

sentencing, a defendant's impairment must be extreme to the point that it deprives the defendant of control over [her] actions." *State v. McLaughlin*, 725 N.W.2d 703, 716 (Minn. 2007) (quotation omitted). Although Carlson stated that Guillain-Barré can cause erratic behavior, she also stated that the disorder was not the reason she committed the offense, that she knew stealing the jewelry was wrong, and that she deserved to be punished. Given the record, the district court did not abuse its discretion by refusing to depart based on Carlson's illness.

In conclusion, neither Carlson's proffered reasons for departure nor the district court's rejection of those reasons lead us to conclude that this is a "rare" case warranting reversal of the district court's refusal to grant a downward durational departure. In fact, we are not aware of any case, published or unpublished, identifying such a "rare" case. *See State v. Sherwood*, 341 N.W.2d 574, 578 (Minn. App. 1983) ("Although *Kindem* declined 'entirely to close the door on appeals from refusals to depart,' no Minnesota reviewing court as yet has found that 'rare' case with truly 'compelling circumstances' requiring interference with imposition of the presumptive sentence."). We therefore affirm.

**Affirmed.**