*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0929**

State of Minnesota,
Respondent,

vs.

Jesus Ivan Torres-Lopez,
a/k/a Jesus Ivan Lopez-Torres,
Appellant

**Filed February 1, 2016
Affirmed
Worke, Judge**

Freeborn County District Court
File No. 24-CR-11-298

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Craig S. Nelson, Freeborn County Attorney, David J. Walker, Assistant County Attorney, Albert Lea, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Worke, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant argues that the district court abused its discretion by revoking his probation because it improperly relied on his immigration status, and the policies

favoring probation outweigh the need for confinement. Appellant also argues that the district court erred by denying him custody credit for time in federal custody. We affirm.

## FACTS

In April 2011, appellant Jesus Ivan Torres-Lopez pleaded guilty to a first-degree controlled-substance crime. The district court sentenced Torres-Lopez to 86 months in prison but stayed execution and placed Torres-Lopez on probation for 30 years. The district court required Torres-Lopez to refrain from re-entering the United States illegally if he were deported. If Torres-Lopez was not deported, the stay of execution would be vacated, requiring Torres-Lopez to serve his prison term.

Torres-Lopez was deported, but unlawfully returned and was picked up by immigration on May 5, 2013. Torres-Lopez pleaded guilty in federal court to the felony offense of re-entry of a removed alien. On November 29, 2013, Torres-Lopez was released from federal custody and transported to Minnesota.

In February 2014, the district court vacated the stay of execution and committed Torres-Lopez to the Commissioner of Corrections for 86 months. Torres-Lopez appealed, and this court remanded because the district court did not sufficiently satisfy the *Austin* factors. *State v. Torres-Lopez*, No. A14-0767, 2014 WL 5343316, at *3 (Minn. App. Oct. 20, 2014), *review denied* (Minn. Dec. 30, 2014).

At the probation-violation hearing, Torres-Lopez admitted to returning to the United States to pay back the money lost in connection with his original arrest. Torres-Lopez stated that people threatened to kill his brother or chop off one of his hands if he

2

did not return. The district court executed Torres-Lopez's sentence and did not award custody credit for his time in federal custody. This appeal follows.

## DECISION

***Probation revocation***

Torres-Lopez argues that the district court abused its discretion by revoking his probation because it improperly relied on his immigration status. "The [district] court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn. 1980).

Before revoking probation, a district court must: (1) "designate the specific condition or conditions that were violated[,]" (2) "find that the violation was intentional or inexcusable[,]" and (3) "find that [the] need for confinement outweighs the policies favoring probation." *Id.* at 250. The third *Austin* factor may be satisfied by finding that (1) confinement is necessary to protect the public from further criminal activity, (2) the offender requires correctional treatment that can most effectively be provided by confinement, or (3) failing to revoke probation would unduly depreciate the seriousness of the violation. *Id.* at 251.

Torres-Lopez's argument that the district court improperly relied on his immigration status in analyzing the third *Austin* factor is unpersuasive.[1] Here, the district

---

[1] Torres-Lopez does not challenge the district court's application of the first two *Austin* factors.

court listed four reasons supporting its conclusion that the need for confinement outweighed the policies favoring probation:

> a. It was never the intent of the sentencing court to place [Torres-Lopez] on supervised probation. [Torres-Lopez] was given a dispositional departure, placed on unsupervised probation, given the conditions of probation, and was then deported. Supervised probation was never an option in this case.
> b. There is no doubt that if [Torres-Lopez] is again placed on "unsupervised probation" he will again be deported. As such, [Torres-Lopez] is truly unamenable to probation.
> c. The serious nature of the violation requires confinement over "probation." [Torres-Lopez] was convicted of a first-degree controlled substance offense and was facing a lengthy prison sentence. [Torres-Lopez] was then given a dispositional departure and was deported. [Torres-Lopez] intentionally re-entered the United States and served time in a federal prison for that offense. To simply place [Torres-Lopez] on "probation" again and allow him to be deported would seriously depreciate the serious nature of these violations.
> d. It should be noted that the [district court] did consider a lesser sanction in this case. That lesser sanction involved some local jail time and then placing [Torres-Lopez] on "probation" and allowing him to be deported a second time. The [district court] rejected that option because it is the [district court's] belief and finding that [Torres-Lopez] will again return to the United States after a second deportation. Given that scenario, [Torres-Lopez] will have had little consequence for a very serious drug offense.

Three of the district court's reasons for revoking probation are independent of Torres-Lopez's immigration status. The district court supported its decision by specifically recognizing (1) that the original sentencing judge never intended to place Torres-Lopez on supervised probation, (2) the "serious nature" of the violation and the original offense of conviction, (3) the fact that Torres-Lopez faced a "lengthy prison

4

sentence," and (4) the likelihood that Torres-Lopez will continue to violate probation. These factors provide a sufficient basis for the district court to conclude that the need for confinement outweighs the policies favoring probation. *See id.* at 249, 251 (affirming district court's probation revocation because offender failed to enter a drug-treatment facility as required by the probation order, stating that "the seriousness of [the] violation would be denigrated if probation were not revoked").

Torres-Lopez relies on *State v. Mendoza*, but *Mendoza* is distinguishable. *See* 638 N.W.2d 480, 484 (Minn. App. 2002), *review denied* (Minn. Apr. 16, 2002). In *Mendoza*, two defendants pleaded guilty to counts of conspiracy to commit a first-degree controlled-substance crime. *Id.* at 481–82. The defendants moved for dispositional departures on the ground that they were amenable to probation. *Id.* at 482. A probation officer stated that probation would not be appropriate because the defendants would likely be deported. *Id.* The district court stated that "the complicating factor is obviously the INS situation, which makes the otherwise possible option of some kind of a local disposition really impossible and impractical." *Id.* The district court imposed 81-month prison sentences. *Id.*

This court concluded that the district court improperly relied on the defendants' immigration statuses when it sentenced them and that deportation is a collateral consequence of a guilty plea because the ultimate decision regarding deportation is handled by INS. *Id.* at 483–84. "[C]onsideration of a possible collateral consequence, which is beyond the control of the district court and which may or may not occur, is not a

5

valid consideration in deciding *whether to impose a presumptive sentence or to depart from the guidelines.*" *Id.* at 484 (emphasis added).

Here, the district court was not considering whether to impose a presumptive sentence or depart from the guidelines. Rather, this case involved a probation-violation hearing where the district court decided whether to continue probation or execute Torres-Lopez's sentence. Additionally, the district court did not rely solely on Torres-Lopez's immigration status in making its decision. The district court recognized the serious nature of the violation and original conviction, the intent of the original sentencing judge, the lengthy prison sentence Torres-Lopez faced, and the likelihood that Torres-Lopez would continue to violate probation. These considerations also support the district court's finding that the need for confinement outweighed the policies favoring probation. Therefore, the district court did not abuse its discretion by revoking probation.

### Custody credit

Torres-Lopez also argues that the district court erred by denying him custody credit for his time in federal custody. "[The] decision whether to award [custody] credit is a mixed question of fact and law." *State v. Clarkin*, 817 N.W.2d 678, 687 (Minn. 2012) (quotation omitted). We review the district court's factual findings concerning the custody credit the defendant seeks under the clearly erroneous standard and then apply the rules of law to those circumstances under the de novo standard. *Id.*

"A defendant bears the burden of establishing that he/she is entitled to [custody] credit." *State v. Garcia*, 683 N.W.2d 294, 297 (Minn. 2004). The decision to grant custody credit is not discretionary with the district court. *State v. Doyle*, 386 N.W.2d

6

352, 354 (Minn. App. 1986). "When pronouncing sentence the court must . . . [s]tate the number of days spent in custody in connection with the offense or behavioral incident being sentenced. That credit must be deducted from the sentence and term of imprisonment . . . ." Minn. R. Crim. P. 27.03, subd. 4(B).

In *State v. Willis*, the supreme court stated that "[custody] credit should be given for time spent in jail in another state *solely in connection* with the offense of sentencing." 376 N.W.2d 427, 428 (Minn. 1985) (emphasis added). The supreme court relied on *State v. Brown*, in which the court stated, "Of course, if part of the time [the] defendant spent in jail in Illinois was in connection with an Illinois charge, he would not be entitled to a credit for that time." *Id.* at 428–29 (quotation omitted). Here, Torres-Lopez was in federal custody for pleading guilty to a federal offense; therefore, he is not entitled to custody credit for time in federal custody from May 5 through November 28, 2013.

**Affirmed.**